**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| CHAPTER 11 TRUSTEE OF<br>NEW ENGLAND CONFECTIONARY<br>COMPANY, INC.,<br><br>            **Plaintiff,**<br><br>v.<br><br>ACAS, LLC, ARES CAPITAL<br>CORPORATION, ARES CAPITAL<br>MANAGEMENT LLC, MICHAEL<br>MCGEE, MYUNG YI, ANUJ KHANNA,<br>GORDON O'BRIEN, STEPHEN CHEHI,<br>DANIEL KATZ, DOUGLAS WEEKES,<br>AND DAVID EATON,<br><br>            **Defendants.** | **Adversary Proceeding<br>No. 19-01011** |

**MOTION TO APPROVE SETTLEMENT AGREEMENT RESOLVING PENDING
ADVERSARY PROCEEDINGS AGAINST ACAS, LLC AND RELATED ENTITIES
AND FOR AUTHORITY TO ENTER INTO RELATED AGREEMENTS**

Harold B. Murphy, the Chapter 7 trustee (the "**Trustee**" or "**Chapter 7 Trustee**") of

New England Confectionery Company, Inc.  ("**NECCO Candy**" or the "**Debtor**") hereby

requests that the Court enter an order approving the Settlement Agreement (the "**Settlement**

**Agreement**") between and among the Trustee and ACAS, LLC ("**ACAS**"), Ares Capital

Corporation ("**ARCC**"), Ares Capital Management LLC, Michael McGee, Myung Yi, Anuj

Khanna, Stephen Chehi, Daniel Katz, and nominal defendants NECCO Realty Investments,

LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO Realty MA III LLC

(collectively, the "**Defendants**") and authorizing the Trustee to enter into certain related

agreements which are in furtherance of the terms of the Settlement Agreement (the "**Related**

1

**Agreements**").[1]   A copy of the Settlement Agreement is attached to this motion as <u>Exhibit A</u>

and has been separately filed herewith.  Copies of the Related Agreements, with certain

redactions applied, are attached to this motion as <u>Exhibit B</u>.  The Settlement Agreement resolves

the disputes between the Parties in two pending adversary proceedings before the Court (as

further defined below, the "**Adversary Proceedings**") and the Defendants' claims against the

Debtor's estate.  It also resolves the substantial claims of the Pension Benefit Guaranty

Corporation (the "**PBGC**") against the Debtor which total approximately $6,000,000, through

the assumption of the of the Debtor's single-employer pension plan by ACAS' designee, and the

subsequent withdrawal of such claims.  In connection therewith, the Trustee seeks authority to

enter into the Related Agreements which are required by and in furtherance of the terms of the

Settlement Agreement.  In further support of this motion, the Trustee states as follows:

JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).  Venue

is proper in this District pursuant to 28 U.S.C. §§ 1408.

2.      The statutory predicates for this motion are Rules 2002 and 9019(a) of the Federal

Rules of Bankruptcy Procedure and Massachusetts Local Bankruptcy Rules 2002-1 and 9019-1.

BACKGROUND

3.      From 1901 to December 21, 2007, New England Confectionery Company, Inc.

("**Old NECCO**") was a Massachusetts corporation which manufactured and distributed a variety

of well-known sugar and chocolate candy varieties including, without limitation, "NECCO

Wafers," and "Sweethearts," "Havilland Mints," "Clark Bar," and "Sky Bar."  In 2002, Old

---

[1] The Trustee and the Defendants are referred to collectively as the "**Parties**."

NECCO completed the acquisition and build out of a 700,000 square foot state-of-art factory, warehousing facility, and corporate headquarters located at 135 American Legion Highway in Revere, Massachusetts (the "**Revere Property**").  It subsequently relocated substantially all of its operations to the Revere Property from its former iconic facility in Cambridge, Massachusetts.

4.      For a number of years prior to Old NECCO's move to the Revere Facility, it had suffered substantial operating losses.  Those losses continued after the relocation and Old NECCO required a substantial equity infusion and growth of its business in order to generate positive cash flow.  In November 2007, ACAS organized New England Confectionery Company, Inc. as a Delaware corporation ("**NECCO Candy**" or the "**Debtor**") and caused NECCO Candy to enter into an asset purchase agreement with UIS, Inc., a New York corporation and a holder of 100% of the stock of Old NECCO to acquire the assets of Old NECCO.

5.      The 2007 acquisition of Old NECCO's assets (the "**2007 Transaction**") was structured as a leveraged buyout.  ACAS formed NECCO Holdings, Inc., another Delaware corporation ("**Holdings**"), to hold the stock of NECCO Candy.  ACAS, in turn, directly or indirectly, held a majority of all of the stock of Holdings.  ACAS similarly formed NECCO Realty Investments, LLC ("**Realty Holdings**") to hold all of the stock in NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO Realty MA III LLC (collectively, "**NECCO Realty**").  ACAS held the majority of all of the stock in Realty Holdings.

6.      At the closing of the 2007 Transaction on December 21, 2007 (the "**Closing Date**"), Old NECCO conveyed (a) to NECCO Realty its interests in Old NECCO's owned real

estate, including the Revere Property (the "**Owned Real Estate**"), and (b) to NECCO Candy the

assets used to conduct Old NECCO's confectionery manufacturing business. [2]

7.      In exchange for the assets of the Old NECCO under the 2007 Transaction, ACAS

issued the following debt to NECCO Candy and NECCO Realty on the Closing Date:

(a)      A revolving line of credit in the maximum amount of **$8,836,578.26** to NECCO Candy (with all amendments and restatements of the revolver, collectively referred to as the "**ACAS Revolver**");

(b)      A term loan in the principal amount of **$6,800,000** to NECCO Candy (with all amendments and restatements of the term loan, collectively referred to as "**Term Loan A**"); and

(c)      A term loan in the principal amount of **$35,800,000** to NECCO Realty (with all amendments and restatements of the term loan, collectively referred to as "**Term Loan B**").

8.      In connection with the ACAS Revolver  and Term Loan A, NECCO Candy and

NECCO Holdings executed promissory notes relating to each loan and a credit agreement which

granted American Capital Financial Services ("**ACAS Financial**") as agent for ACAS a security

interest in the substantially all of the assets of NECCO Candy.  In connection with Term Loan B,

NECCO Realty executed a promissory note and mortgages on the Owned Real Estate in favor of

ACAS Financial as agent for ACAS.

9.      NECCO Candy contemporaneously entered into a triple net lease with NECCO

Realty for the Revere Property (the "**Revere Lease**").  The Revere Lease had an initial term of

one (1) year with an option to extend for a period of fourteen (14) years through December 31,

2022.  The Revere Lease required NECCO Candy to pay (a) annual base rent to NECCO Realty

in the amount of $3,529,000 in year one, and increasing thereafter, and (b) all assessments, real

---

[2] As part of the 2007 Transaction, NECCO Candy acquired an electrical cogeneration plant located on the Revere Property from an unrelated third party for the sum of $10,000,000.

estate taxes, insurance, all operating expenses, maintenance, repairs and improvements.  NECCO Candy's monthly payments under the Revere Lease serviced the $35,800,000 Term Loan B.

10.    Among other things, NECCO Candy entered into a Management Agreement and Consulting Agreement with ACAS (the "**Management Agreement**") pursuant to which ACAS provided certain management-related services in connection with NECCO Candy's operations and made available employees of ACAS at NECCO Candy to provide financial and other services to NECCO Candy.  In exchange, ACAS was to receive a management fee of and reimbursement of expenses.  At various times since the 2007 Transaction, payments were made directly or indirectly to ACAS under the Management Agreement.

11.    At various times prior to the commencement of NECCO Candy's bankruptcy proceeding, Myung Yi ("**Yi**"), Anuj Khanna ("**Khanna**"), Stephen Chehi ("**Chehi**"), Daniel Katz ("**Katz**") and Michael McGee (singly "**McGee**" and collectively with the foregoing, the "**Director Defendants**") served as directors of NECCO Candy.  While directors of NECCO Candy, Yi and Khanna were simultaneously employed by ACAS and Chehi and Katz were employed by Ares Capital Management LLC.  While a director of NECCO Candy, McGee simultaneously served as Chief Executive Officer of NECCO Candy and a director of NECCO Realty.

12.    Between the Closing Date and April 30, 2008, NECCO Candy lost $5,749,000. Thereafter, NECCO Candy refinanced the ACAS Revolver with Core Business Credit, LP, an entity owned by ACAS ("**CORE**") and CORE issued a new revolving credit facility (the "**CORE Revolver**") with an increased commitment to lend of up to $19,200,000.  In connection with the CORE Revolver, NECCO Holdings executed a guaranty of the obligations thereunder and NECCO Candy granted to CORE a lien on its assets senior to the liens of ACAS.

13. In the fall of that year, CORE was in negotiations to sell its book of loans. In connection therewith and in order to facilitate the sale, ACAS was required to assume CORE's commitment under the CORE Revolver, which was formally assigned to ACAS (the "**Assigned CORE Revolver**").

14. NECCO Candy's substantial losses continued. Between May 2011 and April 2016, NECCO Candy lost approximately $75,675,000. Among other things, in 2011 with consent of NECCO Realty and ACAS, NECCO Candy ceased paying rent to NECCO Realty under the Revere Lease, which unpaid rent was accrued on NECCO Candy's books. During the same span, the Assigned CORE Revolver balance increased to approximately $15,175,000 and NECCO Candy's non-insider trade debt from approximately $3,100,000 to approximately $13,100,000.

15. In early 2016, ARCC began to explore a possible acquisition of ACAS and to conduct due diligence in connection therewith. In May 2016, ACAS and ARCC executed a certain Merger Agreement in anticipation of closing on the acquisition.

16. Later that year, Cannon Capital, LP ("**Cannon**") sent a letter of intent to Mr. Yi, in his capacity of a Member of the Board of NECCO Holdings and NECCO Realty, seeking to purchase the stock of NECCO Holdings and the limited liability interests of NECCO Realty for $35,000,000 (the "**Cannon Transaction**"). In connection therewith, Atlantic Management Corporation ("**Atlantic**") had agreed to purchase the Revere Property from Cannon in a sale-leaseback transaction, the proceeds of such sale purportedly to be used to relocate NECCO Candy's business. Mr. Yi brought the offer to the attention of ACAS, the entity that owned the assets Cannon sought to purchase, and ultimately ARCC.

6

17.     On January 3, 2017, ARCC's acquisition of ACAS closed.  Thereafter and with separate agreement with Cannon, NECCO Realty agreed to sell the Revere Property directly to Atlantic for approximately $54,000,000.  On April 20, 2017, the sale of the Revere Property closed.  Cannon was paid approximately $4,300,000 in proceeds from the sale.  The balance was paid to NECCO Realty.

18.     Contemporaneously, NECCO Candy signed a new lease with Atlantic with a term through August 31, 2018 (the "**Atlantic Lease**").  Pursuant to the Atlantic Lease, NECCO Candy was required to pay base rent of $2,500,000 per year or approximately $208,333 per month, plus additional charges, amounts which the Trustee alleges NECCO Candy could not pay.

19.     NECCO Candy continued to operate at the Revere Premises under the Atlantic Lease and to make certain rent payments to Atlantic.  In June 2017 NECCO Holdings retained James Dworkin and Threadstone, LP ("**Threadstone**") to market and sell NECCO Candy's assets.  Threadstone engaged in a sustained marketing effort and the Debtor reviewed and analyzed the several offers received.  After consideration and evaluation, Threadstone and the Debtor determined that the highest and best offer for its assets was presented by CI-N Acquisition, LLC an entity affiliated with Gordon Brothers, a known and experienced liquidator of distressed assets (the "**Stalking Horse Bidder**").

20.     On March 21, 2018, ACAS petitioned a Massachusetts Superior Court for a receivership over NECCO Candy, in order to consummate the sale to the Stalking Horse Bidder for approximately $15,000,000 subject to certain adjustments.  The petition was opposed by several creditors of NECCO Candy and on March 30, 2020, the Superior Court issued an order denying without prejudice ACAS's motion to appoint a receiver.

7

A.      **NECCO Candy's Bankruptcy Case.**

21.     Three days later, on April 3, 2018 (the "**Petition Date**"), three (3) of NECCO Candy's trade creditors filed an involuntary petition against NECCO Candy in the United States Bankruptcy Court for the District of Massachusetts (the "**Bankruptcy Court**").

22.     On April 17, 2018, NECCO Candy filed a motion to convert the case to a Chapter 11 proceeding, along with a motion to sell substantially all of its assets to the Stalking Horse Bidder under the same structure that had been proposed in the state court proceeding, but for an initial payment of  $13,296,900, plus (a) a share of the any net proceeds from the sale of inventory produced and sold by the Buyer after the purchase of the Debtor's assets, and (b) a share of the any net proceeds in excess of the amount of $15,546,900 from the resale of the Debtor's assets by the Buyer.  The proposed sale was required to close before May 1, 2018.  The proposed sale process did not provide for further solicitation of counteroffers or competitive bidding in the Chapter 11 case.

23.      On April 19, 2018, the Bankruptcy Court held a hearing, entered an order for relief, and granted a motion to convert the case to Chapter 11 (the "**Bankruptcy Case**").  On April 20, 2018, at the request of the United States Trustee and creditors, the Bankruptcy Court authorized the appointment of the Trustee as Chapter 11 Trustee for NECCO Candy.[3]

24.     Among other things during the Bankruptcy Case, the Trustee reached agreement with ACAS regarding use of cash collateral with provisions for post-petition borrowing which agreement was approved by the Court on May 3, 2018 [docket no. 133] (the "**Financing Order**").   The Trustee also negotiated and obtained approval of a competitive bidding process for NECCO Candy's assets [docket no. 131], pursuant to which the Trustee marketed and

---

[3] On January 15, 2019, upon motion by the Chapter 11 Trustee, the case was converted to a case under Chapter 7 and the Trustee was appointed Chapter 7 Trustee of NECCO Candy.

solicited counteroffers with the assistance of Threadstone as his court-authorized investment banker.

25.    Ultimately, as a result of the Section 363 bankruptcy sale process approved by the Bankruptcy Court and as proposed and implemented by the Trustee, seven bids for NECCO Candy's product lines and other assets were received.  An auction was held amongst the qualifying bidders for substantially all of NECCO Candy's assets on May 23, 2018, at which the high bid submitted was $18,830,000, subject to certain adjustments.  The high bidder subsequently alleged that NECCO Candy's assets had been compromised due to alleged deterioration of NECCO Candy's assets.  The high bidder advised the Trustee that it was unwilling to close on the terms of its previously submitted asset purchase agreement unless the Trustee accepted material modifications including a substantial reduction in the gross sale price. As a consequence, the sale to the high-bidder did not close and the Trustee had to re-sell the assets for a reduced purchase price of $17,330,000, subject to certain adjustments.  That sale closed on June 1, 2018.

26.    The Trustee is holding net proceeds of the sale, less the costs of administration of the estate in the amount of $9,449,748 as of October 23, 2020 (the "**Net Proceeds**").

**B.**    **The Trustee's Pre-Filing Investigation.**

27.    Pursuant to the negotiated Financing Order, any objection to the claims of ACAS, together with any and all claims or causes of action against ACAS or ACAS Financial, as agent to ACAS, or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, employees, attorneys or advisors were required to be commenced by the Trustee prior to August 17, 2018 (the "**Challenge Deadline**") or be forever waived.[4]

---

[4] Due to scheduling issues in connection with seeking discovery from certain parties, the Challenge Deadline was extended by agreement between the Trustee and ACAS through and including August 31, 2018.

28.     Accordingly, shortly after the Trustee's appointment and agreements were reached with ACAS and the Stalking Horse Bidder with respect to the use of Cash Collateral, bid procedures and the scheduling of a sale and simultaneously with conduct the sale process, the Trustee commenced an investigation into ACAS's asserted liens and claims.  In connection therewith, the Trustee reviewed the Debtor's books and records, state corporate filings, land records and other corporate records, available loan and lease documents related to the 2007 Transaction, subsequent advances by ACAS to NECCO, and available financials.

29.     The Trustee conferred with certain employees of the Debtor and conducted, with approval of the Bankruptcy Court, certain written examinations of the following pursuant to Fed. R. Bankr. P. 2004:

- ACAS, LLC;

- Ares Capital Corporation;

- David Eaton, a director of the Debtor;

- Myung Yi, a former director of the Debtor and employee of ACAS;

- Daniel Katz, a former director of the Debtor and employee of Ares;

- Stephen Chehi, a director of the Debtor and employee of Ares;

- Burns & Levinson, LLP;

- Arnold & Porter Kaye Scholer LLP;

- Young Conaway Stargatt & Taylor, LLP

30.     In response to the Trustee's request, the examinees produced thousands of documents concerning, among other things, the 2007 Transaction, the Debtor's transactions with CORE, the Cannon Transaction, the Atlantic Lease, Debtor's retention of Threadstone and its pre-petition sale efforts, the management of the Debtor from and after the 2007 Transaction, and

information regarding payments and other transfers made to or for the benefit of ACAS or its affiliates from the Debtor and/or NECCO Realty.  Following review of the produced documents, the Trustee conducted multiple oral examinations as part of his investigation.

### C.      The Adversary Proceedings.

31.      Following the investigation and in advance of the Challenge Deadline, the Trustee commenced two actions, respectively captioned as *Murphy v. ACAS, LLC, et al.*, Adv. Proc. No. 18-01140 and *Murphy v. ACAS, LLC, et al.*, Adv. Proc. No. 19-01011 (collectively, the "**Adversary Proceedings**").

32.      In Adversary Proceeding 18-01140, against ACAS, NECCO Realty Investments LLC, and NECCO Realty (the "**Debt Action**"), the Trustee alleges, among other things, that ACAS, which was an indirect shareholder of and a lender to NECCO Candy, caused NECCO Candy to take certain actions and to enter into certain transactions that, the Trustee claims, were intended to benefit ACAS rather than NECCO Candy.  As a result of its alleged conduct the Trustee asserts twenty-eight (28) counts against the Defendants in the Debt Action including, among others, that ACAS should be held liable for breach of fiduciary duty; that ACAS's claims against NECCO Candy should be disallowed, equitably subordinated or recharacterized; that payments allegedly made to or for the benefit of ACAS should be avoided under fraudulent transfer and preference theories; that various entities should be consolidated with one another; that the Trustee should obtain the benefit of certain value that was received by NECCO Realty; and that NECCO Realty's rent claim against NECCO Candy should also be disallowed.  The Defendants deny any wrongdoing or that the Trustee is entitled to the relief sought in the Debt Action.

11

33.     In Adversary Proceeding 19-01011, against ACAS, ARCC, Ares Capital Management LLC, and the Director Defendants (the "**D&O Action**"), the Trustee asserts that various officers and directors of NECCO Candy (including Michael McGee, Myung Yi, Anuj Khanna, Stephen Chehi, and Daniel Katz) breached their fiduciary duties by permitting certain transactions to take place, and preventing others from taking place.  As a result of the alleged conduct, the Trustee asserts four (4) counts for breach of fiduciary duties against various Director Defendants in the D&O Action relating to and in connection with (a) the Cannon Deal, (b) the termination of the Revere Lease and the imposition of the Atlantic Lease, and (c) the liquidation of NECCO Candy's assets.  The Trustee asserts six (6) corresponding aiding and abetting actions against ACAS, ARCC, and Ares Capital Management, LLC.  The Defendants deny that they breached any fiduciary duty and deny that the Trustee is entitled to any of the relief sought in the D&O Action.

34.     On November 5, 2018, the Defendants filed motions to dismiss the Adversary Proceedings.  The Trustee filed oppositions to those motions.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the Debt Action.  No. 18-01140, docket no. 44.  On August 16, 2019, the Trustee filed an amended complaint in that proceeding.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the D&O Action.  No. 19-01011, docket no. 63.  On February 14, 2020, the Trustee filed an amended complaint in that matter.  The Defendants in the Debt Action subsequently filed a separate motion to dismiss Counts VI-XVI, XIII, and XXV of the Trustee's amended complaint.  The Defendants in the D&O Action have answered the Trustee's complaint.

D. **The Proofs of Claims.**

35. ACAS and Affiliates have asserted multiple substantial secured and unsecured claims in the Bankruptcy Case asserting to be due not less than $140,000,000 on account of their various asserted claims and the multiple agreements between and among the Parties and asserting liens on substantially all of the Debtor's assets.

36. ACAS has filed multiple claims against the Debtor for approximately $107,000,000 claimed to be due under its asserted loans to NECCO Candy and for indemnification for payments made on account of a certain single-employer Sixth Amended and Restated NECCO Pension Plan (the "**NECCO Candy Pension Plan**") and a certain multi-employer pension plan (the "**IAM Pension Plan**") each administered by the Debtor for the benefit of certain employees [Claims Nos. 138-1, 139-1, and 157-1]. ACAS asserts that its $107,000,000 asserted to be due under its asserted loans is secured by a first-priority lien on all or substantially all of NECCO Candy's assets including, without limitation, the Net Proceeds.

37. NECCO Realty has filed a claim for approximately $34,000,000 for rent asserted to be due under the Revere Lease [Claims No. 160-1].

38. Each of the Director Defendants has filed a contingent, unliquidated claim for indemnification in connection with any claim brought by the Trustee against the Director Defendant [Claim Nos. 151-1 through 155-1 and 158-1 through 159-1].[5]

39. In addition to the Defendant Claims, the PBGC filed multiple claims for more than $6,000,000 relating to asserted unfunded liabilities, estimated unpaid employer contributions, and estimated unpaid premiums under the NECCO Pension Plan. [Claim Nos.

---

[5] The proofs of claim filed by the Defendants including, without limitation, Claim Nos. 138-1, 139-1, 151-1 through 155-1, 157-1 through 159-1, and 160-1 are referred to as the "**Defendant Claims**."

13

100-2 through 102-2] (the "**PBGC Claims**").  The PBGC asserts that an unspecified amount of the PBGC Claims is entitled to priority under Section 507(a) of the Bankruptcy Code.

40.    IAM Pension Benefit Corporation ("**IAM**") filed a claim for approximately $1,500,000 on account of asserted withdrawal liability under a certain multi-employer pension plan [Claim No. 148-1] (the "**IAM Pension Claim**").

41.    The Trustee estimates that the allowed third party general unsecured claims against the Debtor total approximately $9,750,000.

### THE SETTLEMENT AGREEMENT

42.    Following discussions between the Parties and because mediation is encouraged whenever feasible, the Trustee and the Defendants agreed to request that the Court approve the submission of the Adversary Proceedings to mediation.  All of the Parties and certain insurers of NECCO Candy and  ARCC and related parties  agreed to attend the mediation.  On March 18, 2020, the Parties filed joint motions in the Adversary Proceedings to submit their disputes to mediation with a request to appoint the Honorable Chief Judge Christopher Panos as mediator. No. 18-01140, docket no. 52; No. 19-01011, docket no. 72.  Following supplement by the Parties, on April 8, 2020, the Court entered scheduling orders in the Adversary Proceedings, referring them to mediation to be conducted by Chief Judge Panos.  No. 18-01140, docket no. 55; No. 19-01011, docket no. 78.  In accordance with their agreements and the orders of the Court, on May 15, 2020, the Parties submitted separate mediation statements to Chief Judge Panos in support of their respective positions.

43.    An all-day mediation session was held on September 9, 2020 via Zoom video conference.  All of the Parties and relevant insurers attended the mediation.  At the conclusion of

14

the mediation, the Parties reached an agreement in principle to resolve all of the disputes between them.

44.    Following extensive subsequent discussions and negotiations, the Parties have been able to memorialize their agreement in the Settlement Agreement.  The Settlement Agreement provides,[6] in relevant part and subject to an order of the Bankruptcy Court in the form attached thereto (the "**Approval Order**") becoming a final order:

a.    The Trustee shall retain, from the Net Proceeds the amount of $7,400,000, free and clear of the liens, claims and encumbrances of the Defendants including, without limitation, the Defendant Claims.

b.    The Trustee shall pay to ACAS or ARCC (as directed by counsel for ACAS and ARCC), from the Net Proceeds, the sum of $2,049,748, plus any interest and additional proceeds from the liquidation of the Debtor's assets, excluding any recoveries from avoidance actions under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, other than claims for recovery of any unauthorized disposition of post-petition collateral, received by the Trustee after October 23, 2020 through the Final Approval Date (the "**Lender Amount**").[7]

c.    Effective upon approval and consummation of the Settlement Agreement, the Parties shall remise, discharge, and release each other from any and all claims related to or in connection with (i) the Adversary Proceedings; (ii) the claims asserted in the Adversary Proceedings; and (iii) the NECCO Bankruptcy Case, excepting only that the secured claims of ACAS or ARCC shall be preserved

---

[6] The following summary of the Settlement Agreement and the Related Agreements is for descriptive purposes only. In the event of a discrepancy between the Settlement Agreement or the Related Agreements and this motion, the terms of the Settlement Agreement and the Related Agreements shall control.

[7] The Trustee does not anticipate receiving additional proceeds of the liquidation of the Debtor's assets.

solely to the extent necessary to receive the Lender Amount.

d.      An affiliated designee of ACAS or ARCC (the "**ACAS/ARCC Designee**") shall assume, for purposes of all applicable provisions of the Employee Retirement Income Security Act of 1974, sponsorship of the NECCO Pension Plan and the PBGC will withdraw the PBGC Clams from the NECCO Bankruptcy Case all in accordance with the terms of a tri-party agreement between and among the ACAS/ARCC Designee, the Trustee, and the PBGC, which is a Related Agreement attached to this motion as Exhibit B (the "**Pension Settlement Agreement**").  ARCC, on behalf of itself and all of its affiliates, expressly denies that it (or any of its affiliates) is or was under "common control," or a member of a "controlled group," with NECCO (within the meaning of ERISA or Section 414 of the Internal Revenue Code.

e.      ACAS and ARCC represent that they paid IAM good and valuable consideration in exchange for IAM's withdrawal of the IAM Claim of $1,490,237 in the NECCO Bankruptcy Case.

45.    The Settlement Agreement includes a number of usual and customary miscellaneous terms including, without limitation, a non-disparagement clause, an agreement to take such further actions as are commercially reasonable to consummate the Settlement Agreement, and a provision for retained jurisdiction of the Bankruptcy Court over disputes related to the Settlement Agreement.

46.    The Related Agreements are intended to effectuate the provisions of the Settlement Agreement relating to the assumption of the NECCO Pension Plan.  Pursuant to the Pension Settlement Agreement and among other things, the ACAS/ARCC Designee agrees to

16

assume the NECCO Pension Plan, the PBGC consents to such assumption and agrees to

withdraw the PBGC Claims from the NECCO Bankruptcy Case, and the Trustee agrees to

cooperate with the ACAS/ARCC Designee in connection with assuming and administering the

Plan.  The second Related Agreement between the ACAS/ARCC Designee and the Trustee sets

forth the mechanics for assumption of the NECCO Pension Plan.

### REQUESTED RELIEF

47.      The Trustee requests that the Settlement Agreement be approved as a fair and

equitable resolution of the competing claims of the Trustee and the Defendant.  In connection

therewith, the Trustee requests that the Court authorize the Trustee to enter into the Pension

Settlement Agreement to effectuate the assumption of the NECCO Pension Plan by the

ACAS/ARCC Designee and the release and withdrawal of the PBGC Claims.

**A.      The Settlement Agreement Should Be Approved**.

48.      "Stipulations of settlement are favored by the courts, and they will rarely be set

aside absent fraud, collusion, mistake or other such factor as would undo a contract." *In re*

*Indian Motorcycle Co.*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003); *see also In re Healthco Int'l,*

*Inc.*, 136 F.3d 45, 50 n.5 (1st Cir. 1998) ("Compromises are favored in bankruptcy.").  While the

decision to approve a particular settlement lies within the sound discretion of the Bankruptcy

Court, the Court should give deference to the business judgment of the trustee.  *See In re*

*Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re Resorts Int'l, Inc.*, 145

B.R. 412, 451 (Bankr. D.N.J. 1990).  Settlements should be approved if they fall above the

lowest point on the continuum of reasonableness.  "[The] responsibility of the bankruptcy

judge…is not to decide the numerous questions of law and fact raised…but rather to canvass the

issues and see whether the settlement fall[s] below the lowest point in the range of

17

reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2ⁿᵈ Cir. 1983)

49. A settlement should be approved where it is fair and equitable. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Jeremiah v. Richardson*, 148 F.3d 17 (1st. Cir. 1998); *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mtg. Corp.)*, 68 F.3d 914 (5th Cir. 1995). The First Circuit has held that:

> The bankruptcy judge has the authority to approve a compromise of a claim pursuant to Bankruptcy Rule 9019(a). The ultimate issue on appeal is whether the bankruptcy court abused its discretion when it approved the compromise, which is a process requiring the bankruptcy court to 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'

*Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). *In re GHR Cos.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985) (*quoting In re Boston & Providence R.R.*, 673 F.2d. 11, 12 (1st Cir. 1982) (internal citations omitted). In determining whether to approve a settlement, the following factors should be considered:

a. the probability of the success in the litigation being compromised;

b. the difficulties, if any, to be encountered in the matter of collection;

c. the complexity of the litigation involved and the expense, inconvenience, and delay in pursuing the litigation; and

d. the paramount interest of the creditors and a proper deference to their reasonable views.

*City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re American Cartage, Inc.)* (*quoting Jeffrey v. Desmond*, 70 F.3d at 185. *See also Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 (1st Cir. 1998). Consideration of these factors warrants approval of the Settlement Agreement.

18

A.        **The Probability of Success in the Adversary Proceedings.**

50.        The Trustee believes that the Chapter 7 estate would likely ultimately prevail in both Adversary Proceedings, but the Defendants do not agree with that assessment and the outcome is not certain.  The Adversary Proceedings involve numerous disputes of law and fact and the Defendants have asserted substantial defenses to the claims.  The Defendants have filed multiple claims against the bankruptcy estate which would need to be recharacterized, subordinated, or disallowed in order to provide a meaningful recovery to creditors.

51.        The Defendants have laid claim to substantially all of the assets of the Debtor's estate.  ACAS has filed a claim against the estate for $107,000,000 on account of its asserted loans to NECCO Candy, and asserts a first-priority lien on substantially all of the Debtor's assets including all of the Net Proceeds of the Debtor's liquidation.  ACAS has filed a separate unsecured claim against the estate for indemnification for any claims related to the Debtor's pension plans, which have been asserted to be as much as $7,500,000.[8]  NECCO Realty has filed a claim against the estate for more than $33,000,000 on account of rent asserted to be due under the Revere Lease.  Each of the Director Defendants has filed a contingent, unliquidated claim against the estate for indemnification, including legal and professional fees and costs, incurred in connection with the claims brought by the Trustee.

52.        The Trustee's complaint in the Debt Action alleges that NECCO Candy was undercapitalized from its inception and insolvent at all relevant times and that ACAS and then ARCC used their respective influence and control to engage in a series of transactions to the detriment of NECCO Candy's creditors.  The Debt Action seeks a declaration that because of ACAS's alleged control over the Debtor, it owed a fiduciary duty to the Debtor which it

---

[8] The PBGC's claims related to the Debtor's single employer pension plan total more than $6,000,000.  IAM's claim related to the Debtor's multi-employer pension plan is more than $1,490,000.

19

breached by its inequitable conduct.  The Trustee alleges, among other things, that ACAS and then ARCC, engaged in a decade-long pattern of misconduct and exploitation of NECCO Candy which resulted in tens of millions of dollars being transferred to or for the benefit of ACAS/ARCC and that the purported loans to NECCO Candy by ACAS were equity infusions designed to keep NECCO Candy afloat so that ACAS/ARCC could maximize the value of the Revere Property, for the benefit of NECCO Realty and ultimately ACAS.  Based upon this alleged conduct, the Debt Action seeks to recharacterize, subordinate, or disallow the claims of ACAS and NECCO Realty against the estate and to recover, as fraudulent or preferential, transfers made to or for the benefit of ACAS or ARCC dating back to 2008.

53.     ACAS and NECCO Realty deny substantially all of the Trustee's allegations in the Debt Action and assert that regardless of NECCO Candy's financial position on the Petition Date, ACAS identified NECCO Candy as a legitimate "turn-around opportunity" in 2007 and over the next decade it loaned NECCO Candy tens of millions of dollars in series of legitimate commercial transactions, including to modernize and expand its operations.  ACAS and NECCO Realty assert that they acted properly at all times and that there is no valid basis for the relief sought by the Trustee in the Debt Action.  There are numerous disputed facts between the parties in the Debt Action respecting the Debtor's finances, accounting, and tax matters which would need to be further examined in discovery and determined at trial.   Among other things, the parties dispute the Debtor's solvency and the adequacy of its working capital at multiple stages of ACAS's ownership.  Determination of those disputes would likely rest upon detailed expert reports and expert testimony, requiring the Bankruptcy Court to evaluate the credibility of competing experts.

54.     The estate needs to prevail on the recharacterization, subordination, or disallowance counts in the Trustee's complaint in order to make funds available to creditors. Those causes of action are inherently complex, fact-specific inquiries, which are difficult to prove.   If the Trustee is ultimately unsuccessful, it is likely that the Trustee's avoidance claims would similarly fail because those claims are predicated upon the same essential elements.

55.     The disputes in the D&O Action are just as factually intensive and the Trustee bears the ultimate burden of proving the complained-of inequitable conduct and damages resulting therefrom at trial.  The Trustee's complaint alleges that at all relevant times, the Director Defendants were conflicted because of their simultaneous roles as NECCO Candy board members, ACAS employees and/or NECCO Realty board members, and that ultimately they breached their fiduciary duties by, among other things, scuttling the Cannon Transaction, terminating the Revere Lease, authorizing the Atlantic Lease, and allowing the value of NECCO Candy's assets to deteriorate.  The Defendants in the D&O Action have denied all of these allegations and asserted that the NECCO Candy board was disinterested and independently advised by independent board members and outside counsel, and at all times acted in a manner consistent with their fiduciary duties.   The Defendants will likely contend that the estate suffered no damage by their alleged conduct because of the Debtor's dire financial position and ACAS's first-priority lien.  The damage issue would require the retention of additional experts to provide reports and testimony to the Court.

**B.     The Matter of Collection.**

56.     Other than with respect to certain of the Director Defendants in the D&O Action, the Trustee does not anticipate any difficulties in collecting on any judgments that might be entered in his favor in the Adversary Proceedings.

**C.**      **The Complexity, Expense, Inconvenience and Delay of Continued Litigation.**

57.      The issues raised in both Adversary Proceedings are unquestionably factually and legally complex.  While the Trustee has successfully opposed, in part, the Defendants' motions to dismiss the Adversary Proceedings, the Trustee's burden of proof at trial would be substantially greater than under Rule 12(b). There are multiple matters which still need to be resolved in the estate's favor in order for the estate to prevail.  Those matters are contested and the relevant transactions occurred over a period of more than ten years.

58.      In order to try these cases to conclusion, the estate would incur substantial expense for among other things, legal fees, expert fees, and discovery management costs.  In addition to counsel fees and costs, the Trustee would likely require the services of multiple experts.  He has already retained Verdolino & Lowey, P.C. as his accountants and financial advisors and Huron Consulting Services LLC as a financial expert.  He anticipates requiring the services of a damages expert to address the Defendants' arguments in the D&O Action.

59.      Prior to commencing the Adversary Proceedings, the Trustee conducted limited discovery on an accelerated schedule in accordance with the Financing Order, but no discovery has taken place in the Adversary Proceedings.  Litigation of the disputed facts in these cases would require extensive discovery including, without limitation, document production, interrogatories, requests for admission, and the preparation of extensive expert reports, pre-trial statements, and memoranda of law.  Given the contested issues and that the complained-of conduct occurred over a period of more than ten years, the Trustee would be required to present multiple fact witnesses and the parties would be required to prosecute and defend multiple fact and expert depositions. The Trustee and his professionals would be required to review thousands of pages of documents, emails and other records in connection with drafting and responding to

22

discovery requests and preparing for depositions.  The estate's experts would be required to undertake a similarly extensive review of relevant books and records and other materials to prepare the required expert reports and in connection with their anticipated testimony.  The Trustee expects that there would be discovery disputes related to, among other things, the relevance of evidence and the qualification of experts, which will need to be briefed and argued.  The estate has no funds available to pay any of the expenses incurred in connection with the Adversary Proceedings.

60.     Discovery in the Adversary Proceedings would likely take between nine months and one year with trial to be scheduled thereafter based upon the Bankruptcy Court's availability.  It is uncertain whether the Adversary Proceedings could be consolidated for trial or whether they would be tried separately.  If consolidated, trial in Adversary Proceedings would likely take anywhere from three to four weeks.  It is uncertain as to whether the Bankruptcy Court could enter final judgment in the D&O Action or whether, after trial, findings and conclusions would be required to be submitted to the District Court pursuant to Fed. R. Bankr.P. 7052 for entry of judgment.  Any appeal would likely take a year or more to resolve.  The continuing COVID-19 pandemic may cause further delay.

D.     **The Paramount Interests of Creditors.**

61.     Settlement of the Adversary Proceedings serves the paramount interests of creditors.  The Settlement Agreement provides that the estate will receive $7,400,000 of approximately $9,500,000 in Net Proceeds from the liquidation, or approximately seventy-seven percent (77%).  It further provides that the Defendants will waive not less than $150,000,000 in claims against the estate including claims for indemnification on account of a $1,500,000 pension withdrawal liability which ACAS/ARCC paid to have withdrawn from the Bankruptcy

23

Case.  Finally, the Settlement Agreement provides that ACAS/ARCC shall cause the NECCO

Pension Plan to be assumed by the ACAS/ARCC Designee and the claims of the PBGC, which

exceed $6,000,000, to be withdrawn.

62.    There are approximately $2,400,000 in unpaid claims of creditors from NECCO

Candy's Chapter 11 proceeding consisting of estate professionals, the United States Trustee, and

multiple vendors with administrative claims under Sections 503(b)(3), (b)(4), and (b)(9) of the

Bankruptcy Code.  The Trustee estimates that third-party claims against NECCO Candy's estate,

exclusive of the Defendants' claims, total approximately $10,000,000 subject to disallowance or

reduction for, among other things, receipt of avoidable payments.[9]

63.    Approval and consummation of the Settlement Agreement will permit the Trustee

to satisfy all of the allowed and unpaid Chapter 11 claims and to make a meaningful distribution

to prepetition general unsecured creditors equal to approximately 30-40% of their allowed

claims, without the uncertainty, expense and delay of continued litigation.  Based upon the

foregoing, the Trustee submits that the Settlement Agreement more than meets the standards for

approval under Fed. R. Bankr.P. 9019.

WHEREFORE, based upon the foregoing, the Trustee, requests that the Court enter an

order substantially in the form attached to this motion as Exhibit C:

A.    Approving the Settlement Agreement attached to this motion as
Exhibit A;

B.    Authorizing the Trustee to enter into the Related Agreements attached to
this motion as Exhibit B; and

---

[9] The Trustee has commenced adversary proceedings against approximately 25 of the Debtor's prepetition creditors
to recover preferential payments under Section 547 of the Bankruptcy Code reflected in the Debtor's books and
records.

24

C. Granting such other and further relief as is necessary and proper under the circumstances.

> HAROLD B. MURPHY, CHAPTER 7
> TRUSTEE OF NEW ENGLAND
> CONFECTIONERY CO., INC.
>
> By His Attorneys,
>
> /s/ *Christopher M. Condon*
> Harold B. Murphy (BBO #326610)
> Charles R. Bennett (BBO #037380)
> Christopher M. Condon (BBO #652430)
> Murphy & King, Professional Corporation
> One Beacon Street
> Boston, Massachusetts 02108
> Tel: (617) 423-0400
> Fax: (617) 556-8985
> Email: ccondon@murphyking.com

Dated: January 20, 2021

## CERTIFICATE OF SERVICE

I, Christopher M. Condon, hereby certify that on January 20, 2021, I caused a copy of the foregoing motion and exhibits thereto to be filed through CM/ECF system and served electronically upon all parties entitled to notice thereunder.

> /s/ *Christopher M. Condon*
> Christopher M. Condon

EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>　　　　　**Debtor.** | **Chapter 7**<br><br>**Case No. 18-11217-MSH** |
| **HAROLD B. MURPHY,**<br>**CHAPTER 11 TRUSTEE OF**<br>**NEW ENGLAND CONFECTIONERY**<br>**COMPANY, INC.,**<br><br>　　　　　**Plaintiff,**<br><br>**v.**<br><br>**ACAS, LLC,**<br><br>　　　　　**Defendant.**<br><br>**and**<br><br>**NECCO REALTY INVESTMENTS LLC, NECCO REALTY MA I LLC, NECCO REALTY MA II LLC AND NECCO REALTY MA III LLC,**<br><br>　　　　　**Nominal Defendants.** | **Adversary Proceeding**<br>**No. 18-01140** |

| | |
|---|---|
| **In re**<br><br>**NEW ENGLAND CONFECTIONERY COMPANY, INC.**<br><br>　　　　　**Debtor.** | **Chapter 7**<br><br>**Case No. 18-11217-MSH** |

CHAPTER 11 TRUSTEE OF
NEW ENGLAND CONFECTIONARY
COMPANY, INC.,

        **Plaintiff,**

v.

ACAS, LLC, ARES CAPITAL
CORPORATION, ARES CAPITAL
MANAGEMENT LLC, MICHAEL
MCGEE, MYUNG YI, ANUJ KHANNA,
GORDON O'BRIEN, STEPHEN CHEHI,
DANIEL KATZ, DOUGLAS WEEKES,
AND DAVID EATON,

        **Defendants.**

**Adversary Proceeding
No. 19-01011**

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("**Agreement**") is entered into this 20th day of

January 2021, by and between Plaintiff, HAROLD B. MURPHY, in his capacity as the

appointed, qualified and serving Chapter 7 Trustee (the "**Trustee**") of New England

Confectionery Company, Inc. ("**NECCO**" or the "**Debtor**"), on the one hand, and ACAS, LLC

("**ACAS**"), Ares Capital Corporation ("**ARCC**"), Ares Capital Management LLC, Michael

McGee, Myung Yi, Anuj Khanna, Stephen Chehi, Daniel Katz, and nominal defendants NECCO

Realty Investments, LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO

Realty MA III LLC (collectively, the "**Defendants**") on the other hand.  The Trustee and the

Defendants are referred to collectively as the "**Parties**," and individually as a "**Party**."

## BACKGROUND

A.      On April 3, 2018, certain creditors of NECCO filed an involuntary petition for

relief under Chapter 7 of 11 U.S.C. § 101, et seq. (the "**Bankruptcy Code**") against NECCO in

the United States Bankruptcy Court for the District of Massachusetts (the "**Bankruptcy Court**").

This case is referred to as the "**NECCO Bankruptcy Case**."  NECCO voluntarily converted the

Chapter 7 proceeding to a Chapter 11 proceeding in order to effectuate an expedited asset sale

pursuant to Section 363 of the Bankruptcy Code to an affiliate of Gordon Brothers without

opportunity for counteroffers.

B.     On April 20, 2018, the Bankruptcy Court appointed Harold B. Murphy as the

Chapter 11 trustee of the Debtor, who conducted a competitive sale process for the Debtor's

assets, solicited seven (7) counteroffers and ultimately consummated a sale to Round Hill

Investments, LLC and its designee for $15,247,000.

C.     Later, on January 15, 2019, the Bankruptcy Court granted the Trustee's

unopposed motion to convert the NECCO Bankruptcy Case back to a Chapter 7 proceeding.  The

Trustee was then appointed to serve as Chapter 7 trustee for NECCO.

D.     On August 31, 2018, the Trustee initiated two actions against the Defendants:

(i) Adversary Proceeding No. 18-01140 filed against ACAS and nominal defendants NECCO

Realty Investments, LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO

Realty MA III LLC (collectively "**NECCO Realty**"); and (ii) a civil case filed against ACAS,

ARCC, Ares Capital Management LLC, Michael McGee, Myung Yi, Anuj Khanna, Stephen

Chehi, and Daniel Katz in the United States District Court for the District of Massachusetts.[1]

The civil case was subsequently referred to the Bankruptcy Court and assigned Adversary

---

[1] The case initially named additional defendants Gordon O'Brien, Douglas Weekes, David Eaton, Ares Management LLC and Ares Management L.P.  However, the Parties filed a joint stipulation of dismissal of Ares Management LLC and Ares Management L.P.  D.I. 48, Case No. 19-01011.  By an Order dated December 4, 2019, the Court dismissed all the claims against Mr. O'Brien.  D.I. 63, No. 19-01011.  By an Order dated January 31, 2020, the Court dismissed all of the claims against Mr. Weeks and Mr. Eaton.  D.I. 67, No. 19-01011.

3

Proceeding No. 19-01011. Together, these two cases are referred to as the "**Adversary Proceedings**," and the claims in these two cases are referred to as the "**Adversary Claims**."

E.　　　In Adversary Proceeding 18-01140, the Trustee alleges that ACAS, which was an indirect shareholder of and a lender to NECCO, caused NECCO to take certain actions and to enter into certain transactions that, the Trustee claims, were intended to benefit ACAS rather than NECCO.  The Trustee asserts that as a result of its alleged conduct, ACAS should be held liable for breach of fiduciary duty; that ACAS's claims against NECCO should be disallowed, equitably subordinated or recharacterized; that payments allegedly made to or for the benefit of ACAS should be avoided under fraudulent transfer and preference theories; that various entities should be consolidated with one another; that the Trustee should obtain the benefit of certain value that was received by NECCO Realty; and that NECCO Realty's rent claim against NECCO should also be disallowed.

F.　　　In Adversary Proceeding 19-01011, the Trustee asserts that various officers and directors of NECCO (including Michael McGee, Myung Yi, Anuj Khanna, Stephen Chehi, and Daniel Katz) breached their fiduciary duty by permitting certain transactions to take place, and preventing others from taking place.  The Trustee also asserts that ACAS, ARCC, and Ares Capital Management LLC aided and abetted the alleged breaches of fiduciary duty.

G.　　　All of the Defendants in the Adversary Proceedings deny the Trustee's claims in their entirety.

H.　　　On November 5, 2018, the Defendants filed motions to dismiss the Adversary Proceedings.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in Adversary Proceeding 18-01140.  DI 44, No. 18-01140.  On August 16, 2019, the Trustee filed an amended complaint in that proceeding.  After hearing, the

Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in Adversary Proceeding 19-01101. DI 63, No. 19-01011. On February 14, 2020, the Trustee filed an amended complaint in that matter.

I. In order to avoid incurring further cost and expense, the Trustee and the Defendants have agreed to settle and compromise the Trustee's claims against the Defendants in the Adversary Proceedings, upon the terms and conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the promises and mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby covenant and agree as follows:

1. **Settlement Subject to Court Approval.**

1.1 The enforceability of this Agreement shall be subject to and conditioned upon the approval of this Agreement by "Final Approval Order" (as defined in paragraph 1.2 below) of the Bankruptcy Court in the NECCO Bankruptcy Case. The Trustee shall use his best efforts to obtain entry of a Final Approval Order approving this Agreement as promptly as possible. The Defendants shall cooperate with the Trustee in his effort to obtain Bankruptcy Court approval of this Agreement.

1.2 The Trustee shall promptly file a motion to approve this Agreement (the "**Motion**"), together with a proposed order in the form attached hereto as Exhibit A ("**Approval Order**"), in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. The motion shall be in form and content reasonably acceptable to the Defendants. A "**Final Approval Order**" shall be the Approval Order, without any changes that have not been approved in writing by all Parties, upon the expiration of fourteen (14) days following the entry of the Approval Order unless an appeal from such Approval Order has been taken or a motion

Case 19-41011 Doc 83 Filed 01/30/51 Entered 01/30/51 18:48:48 Doc Main Document Page 31 of 113

5

for reconsideration, rehearing or to vacate or modify the Approval Order (collectively, a

"**Reconsideration Motion**") has been filed, in which event the Approval Order shall be deemed

"Final" if and when both (a) the appeal or Reconsideration Motion, as applicable, has been

finally adjudicated or dismissed and is not subject to any further judicial review and (b) the

Approval Order remains unchanged or has been changed only in a manner that is agreed to in

writing by all Parties.  The date on which the Approval Order, without any changes that have not

been approved in writing by all Parties, becomes a Final Approval Order is the "**Final Approval**

**Date**." In the event of an appeal or Reconsideration Motion of the Approval Order, the Parties

shall use their best efforts to seek denial of the Reconsideration Motion, dismissal of the appeal,

or an affirmance of the Approval Order, as applicable.

> 2.      **No Admission of Liability.**

> 2.1      The Parties intend this settlement to be a final and complete resolution of all

claims asserted by the Trustee, and any other claims that could have been asserted by the

Trustee, against the Defendants in the Adversary Proceedings and all claims that have been or

could have been filed or asserted by the Defendants in the NECCO Bankruptcy Case, except as

specifically provided herein.  The Defendants do not admit any liability, nor do they admit any

wrongdoing, however described, including without limitation, any violations of federal or state

laws, and the Defendants expressly deny any such wrongdoing or liability.  Nothing herein

contained shall constitute an adjudication or finding on the merits as to the Trustee's Adversary

Claims, and shall not be deemed to be, intended to be, or construed as an admission of liability,

in any way on the part of any Party, or any evidence of the truth of any fact alleged or the

validity of any claims that have been, could have been, or could be asserted.

Case 18-01011    Doc 83    Filed 07/30/21    Entered 07/30/21 18:48:48    Desc Main
Document    Page 32 of 113

2.2     Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, any fact, the validity of any claim, or of any wrongdoing or liability of the Defendants; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Defendants in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or shall be construed against the Defendants as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.  Moreover, while neither this Agreement nor any negotiations or proceedings connected with it may be construed, offered or received in evidence in any action or proceeding of any kind as an admission or concession of any liability or wrongdoing or otherwise, this Agreement may be offered as necessary to consummate, defend or enforce this Agreement or as otherwise specifically provided in this Agreement.

**3.     Payment Of Net Proceeds of the Debtor's Estate.**

In full settlement and release of the Trustee's claims in the Adversary Proceedings, any other claims that could have been asserted by the Trustee, and any and all claims that have been or could have been filed or asserted by the Defendants in the NECCO Bankruptcy Case, the Parties agree to the following:  from the net proceeds of the liquidation of NECCO's assets, which the Trustee represents were $9,449,748 as of October 23, 2020 (the "**Proceeds**"), the Trustee shall retain the amount of $7,400,000 (the "**Estate Amount**") and shall pay to ACAS or ARCC (as directed by counsel for ACAS and ARRC) the sum of $2,049,748, plus any interest and additional proceeds from the liquidation of the Debtor's assets, excluding any recoveries from avoidance actions under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code,

Case 18-01071    Doc 83    Filed 01/30/21    Entered 01/30/21 18:18:18    Desc Main Document    Page 33 of 113

other than claims for recovery of any unauthorized disposition of post-petition collateral, received by the Trustee after October 23, 2020 through the Final Approval Date (the "**Lender Amount**"). The Trustee shall pay or cause to be paid the Lender Amount to ACAS or ARCC, in immediately available funds, not later than ten (10) days after the Final Approval Date.

4.      **Release From the Defendants.**

Effective as of the Final Approval Date and full payment of the Lender Amount, the Defendants, any successors and assigns, and any other person or entity claiming or that could claim (now or in the future) by, through or on behalf of any of them, remises, relinquishes, acquits, releases and discharges the Trustee, the Debtor, the Debtor's bankruptcy estate, and each of their agents, and attorneys, and the predecessors, successors, assigns, and agents of all such parties (but only in said parties' capacities as such) (collectively, the "**Trustee Releasees**") of and from any claim, as that term is defined in Section 101(5) of the Bankruptcy Code, actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, suits, demands, rights, damages, costs, losses, fees, judgments, debts, obligations and liabilities, of any and every kind, character, nature and/or description whatsoever, whether matured or unmatured, accrued or unaccrued, known or unknown, suspected or unsuspected, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, whether or not asserted, threatened, alleged or litigated, at law, equity or otherwise, that they have or may have against the Trustee Releasees arising out of, based upon or relating to in any way: (i) the Adversary Proceedings or any acts alleged or that could have been alleged therein; (ii) the Adversary Claims; and (iii) the NECCO Bankruptcy Case, including but not limited to claims under any revolving loan agreement, term note agreements, security agreements, or any other agreements, along with any claims for rent, indemnification,

8

contribution, or deficiency and hereby release any and all liens, claims, encumbrances, and interests in any of the assets of the Debtor's estate, including, but not limited to, all claims set forth in in Claim Nos. 138-1, 139-1, 151-1, 152-1, 153-1, 154-1, 155-1, 157-1, 158-1, 158-1, 160-1, and 161-1 in the NECCO Bankruptcy Case, and any claims to the Estate Amount, which shall be retained by the Trustee free and clear of all liens, claims, encumbrances, and interests of the Defendants, provided, however, that the secured claims of ACAS or ARCC shall be preserved solely to the extent necessary for ACAS or ARCC to receive the Lender Amount as set forth in Paragraph 3 (the "**Preserved Secured Claim**").

5. **Release Of the Defendants.**

5.1 Effective as of the Final Approval Date, the Trustee, in his capacity as trustee and on behalf of the Debtor, the Debtor's bankruptcy estate, any successors and assigns and any other person or entity claiming or that could claim (now or in the future) by, through or on behalf of any of them, remises, relinquishes, acquits, releases and discharges the Defendants, and each of their officers, directors, agents, servants, employees, affiliates, managers, shareholders, members, attorneys in the Adversary Proceedings, insurers, co-insurers and reinsurers, and the predecessors, successors, assigns, estates, heirs, personal representatives, trustees, agents, executors and administrators of all such parties (but only in said parties' capacities as such), as well as any person or entity insured under the Debtor's Directors & Officers liability insurance policies (collectively, the "**Defendant Releasees**") of and from any and all actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, claims, suits, demands, rights, damages, costs, losses, fees, judgments, debts, obligations and liabilities, of any and every kind, character, nature and/or description whatsoever, whether

matured or unmatured, accrued or unaccrued, known or unknown, suspected or unsuspected, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, whether or not asserted, threatened, alleged or litigated, at law, equity or otherwise, including, without limitation, claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent transfer, preference or other avoidance, any other right of recovery under any provision of the United States Bankruptcy Code, or violations of any federal, state or local statutes, common law, or other laws, rules or regulations, that now exist or heretofore existed, that have been or could have been asserted or alleged in the Adversary Proceedings, or any other forum or proceeding of any kind against the Defendants (or any of them) which arise out of, are based upon or relate to, or are in connection with the Defendants' transactions or dealings with, acts or omissions relating to, and/or relationships to (i) the Trustee (but only in his capacity as Trustee of the Debtor), or (ii) the Debtor or any of its business or assets, including but not limited to any such actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, preferences, claims, suits, demands, rights, damages, costs, losses, fees, judgments, variances, executions, debts, obligations and liabilities arising out of, based upon or relating to in any way: (i) the Adversary Proceedings or any acts alleged or that could have been alleged therein; (ii) the Adversary Claims; and (iii) the NECCO Bankruptcy

Case 18-10111    Doc 83    Filed 01/20/21    Entered 01/20/21 18:48:48    Desc Main Document    Page 36 of 113

5.2     The Trustee, in his capacity as trustee and on behalf of the Debtor and its estate, further waives and releases any objection that the Trustee or the Debtor might have to the Preserved Secured Claim, as defined in Paragraph 4, including without limitation any claim to subordinate, recharacterize or otherwise impair in any way such Preserved Secured Claim.

6.    **Non-Disparagement.**

The Parties agree that they shall not disparage or otherwise take any action which could reasonably be expected to adversely affect the personal or professional reputation of any Party or of any of the Parties' current or former directors, officers, employees, agents, executives, or attorneys.   This Agreement in no way restricts or prevents any Party from providing truthful testimony concerning the other as required to enforce the terms of the Agreement or to comply with a court order or other  legal process or from providing truthful statements made in response to governmental inquiries.

7.    **Assumption of The NECCO Pension Plan.**

7.1    ARCC, the Trustee, and the Pension Benefit Guaranty Corporation ("**PBGC**") shall  enter into a tri-party agreement, substantially in the form attached hereto as **Exhibit A** (the "**Tri-Party Agreement**"), pursuant to which, inter alia (i) ARCC or an affiliated entity designated by ARCC shall assume for purposes of all applicable provisions of the Employee Retirement Income Security Act of 1974 ("**ERISA**"), as amended and Section 412 of the Internal Revenue Code of 1986, as amended, sponsorship of the frozen NECCO Pension Plan Sixth Amended and Restated NECCO Pension Plan EIN 26-1509879, Plan Number 202, Plan ID 275787 (the "**NECCO Pension Plan**"), and (ii) PBGC shall withdraw its claims against the Debtor's estate including, without limitation, Claim Nos. 100, 101, and 102 in the NECCO Bankruptcy Case.  The Tri-Party Agreement shall not require any payment by the Trustee or the Debtor's bankruptcy estate.  The Trustee shall seek Bankruptcy Court authority to enter into the Tri-Party Agreement at the same time that he seeks authority to enter into this Agreement.  If seeking  such approval of the Tri-Party Agreement requires filing such agreement with the Bankruptcy Court, the Trustee shall make such filing under seal or shall redact the Tri-Party

Agreement in a manner acceptable to ARCC.  ARCC, on behalf of itself and all of its affiliates, expressly denies that it (or any of its affiliates) is or was under "common control," or a member of a "controlled group," with NECCO (within the meaning of ERISA or Section 414 of the Internal Revenue Code.

7.2     The Trustee has signed, in his capacity as Chapter 7 Trustee, Form 5500 filed with the Internal Revenue Service for 2018 and 2019.  In connection with the transfer of the sponsorship of the NECCO Pension Plan to ARCC or an affiliated entity, the Trustee agrees that he will comply with the statutory fiduciary duties imposed upon "plan administrators" by Part 4 of Subtitle B of Title I of ERISA.   The Trustee agrees to use reasonable efforts as a fiduciary of the NECCO Pension Plan to cooperate with the assumption of the NECCO Pension Plan by providing ARCC or its affiliated entity with all plan documents and all other related documents, records and data necessary to effectuate the assumption of sponsorship of the NECCO Pension Plan and for the administration of the NECCO Pension Plan following assumption.  To the extent such documents, records and data  are not within the actual possession of the Trustee but held by third parties on behalf of the Trustee, the Trustee agrees to direct such third parties to cooperate with ARCC or the affiliated entity in connection with any documents so requested.  The Trustee further agrees to execute such documents as may be reasonably necessary or appropriate to effect the assumption of the obligations of the NECCO Pension Plan by ARCC or its affiliated entity (including, but not limited to, formal agreements assigning (i) sponsorship of the NECCO Pension Plan and the power to amend and terminate such plan to ARCC or its affiliated entity; (ii) the trust agreement associated with the NECCO Pension Plan to ARCC or its affiliated entity, and (iii) such service provider agreements relating to the NECCO Pension Plan as may be designated by ARCC or its affiliated entity).  Trustee agrees to promptly provide a copy of all

Case 18-10500    Doc 83    Filed 01/30/21    Entered 01/30/21 18:18:18    Desc Main
Document      Page 38 of 113

12

current service provider contracts relating to the NECCO Pension Plan to ARCC or its designated affiliate so that a determination can be made by them regarding which contracts will be assigned. To the extent such service provider contracts are not within the actual possession of the Trustee but held by third parties on behalf of the Trustee, the Trustee agrees to direct such third parties to cooperate with ARCC or the affiliated entity in connection with any documents so requested.

**8.**     **Miscellaneous**.

8.1     <u>Incorporation of Background Paragraphs</u>. Background paragraphs A-H above are incorporated herein by reference and shall be part of this Agreement and not merely recitals.

8.2     <u>IAM National Pension Fund Claim</u>. On September 17, 2018, IAM National Pension Fund ("IAM") filed Claim No. 148 in the amount of $1,490,237 in the NECCO Bankruptcy Case. ARCC and ACAS represent that they paid IAM good and valuable consideration in exchange for IAM's withdrawal of Claim No. 148. On June 10, 2020, IAM withdrew its claim in the NECCO Bankruptcy Case. D.I. 795, Case No. 18-11217 (Bankr. D. Mass.).

8.3     <u>Further Instruments</u>. The Parties acknowledge that it is their intent to consummate this Agreement and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and, except as otherwise required herein, to exercise their commercially reasonable efforts to accomplish the terms and conditions of the Agreement, including executing any further documentation and taking such further action as may be reasonably necessary to further effectuate or carry out the intent of this Agreement.

8.4     <u>Confidentiality</u>.  All agreements made and orders entered during the course of the Adversary Proceedings relating to the confidentiality of information shall survive this Agreement.

8.5     <u>Amendment</u>.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

8.6     <u>Integration</u>.  This Agreement constitutes the entire agreement between the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

8.7     <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument. Signatures by facsimile or scanned PDF shall have the same effect as original signatures.

8.8     <u>Advice of Counsel</u>.  Each Party to this Agreement has had the opportunity to discuss the matter with legal counsel and enters into this Agreement only after such consultation.

8.9     <u>Binding</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

8.10    <u>Dismissal of Claims</u>.  Upon entry of the Approval Order, the Trustee's claims against the Defendants in the Adversary Proceedings shall be deemed settled and dismissed, with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure, made applicable to the Adversary Proceedings pursuant to Rule 7041 of the Federal Rules of Bankruptcy Procedure.

8.11    <u>Retention of Jurisdiction; Enforcement of the Agreement</u>.  The Parties request that this Agreement, upon approval, be incorporated in the Approval Order or otherwise entered as an order of the Bankruptcy Court in the NECCO Bankruptcy Case.  The Parties further agree that

the Bankruptcy Court in the NECCO Bankruptcy Case shall retain exclusive jurisdiction to enforce this Agreement, provided, however, that the if the Bankruptcy Court shall decline to exercise such jurisdiction, the United States District Court for the District of Massachusetts shall have jurisdiction to enforce this Agreement.

8.12    Governing Law.  Except to the extent governed by the Bankruptcy Code, this Agreement and the rights and duties of the Parties hereunder shall be governed, construed, enforced, and performed in accordance with the law of the State of Delaware, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.

8.13    Authorization.  Having read and understood the foregoing, each person executing this Agreement on behalf of each respective Party warrants and represents that he/she is authorized and empowered to execute and deliver this Agreement on behalf of such Party, and consents to the foregoing terms and conditions by signing below.

Case 19-01011    Doc 83    Filed 01/20/21    Entered 01/20/21 18:48:48    Desc Main Document    Page 41 of 113

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

_____
HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

_____
By: Joshua Bloomstein, Authorized Signatory

_____
MICHAEL MCGEE

_____
MYUNG YI

_____
ANUJ KHANNA

_____
STEPHEN CHEHI

_____
DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

_____
HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION


_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.


_____
By: Joshua Bloomstein, Authorized Signatory


_____
MICHAEL MCGEE


_____
MYUNG YI


_____
ANUJ KHANNA


_____
STEPHEN CHEHI


_____
DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

By: Joshua Bloomstein, Authorized Signatory

MICHAEL MCGEE

MYUNG YI

ANUJ KHANNA

STEPHEN CHEHI

DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

_____
HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION


_____
By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.


_____
By: Joshua Bloomstein, Authorized Signatory


_____
MICHAEL MCGEE


_____
MYUNG YI

_____
ANUJ KHANNA


_____
STEPHEN CHEHI


_____
DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

By: Joshua Bloomstein, Authorized Signatory

MICHAEL MCGEE

MYUNG YI

ANUJ KHANNA

STEPHEN CHEHI

DANIEL KATZ

16

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year set forth above.

ACAS, LLC

HAROLD B. MURPHY, Chapter 7 Trustee
of the Estates of New England Confectionery
Company, Inc.

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL CORPORATION

By: Joshua Bloomstein, Authorized Signatory

ARES CAPITAL MANAGEMENT LLC.

By: Joshua Bloomstein, Authorized Signatory

MICHAEL MCGEE

MYUNG YI

ANUJ KHANNA

STEPHEN CHEHI

DANIEL KATZ

16

EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re** | |
| **NEW ENGLAND CONFECTIONERY COMPANY, INC.** | **Chapter 7** |
| | **Case No. 18-11217-MSH** |
| **Debtor.** | |

**ORDER APPROVING SETTLEMENT AGREEMENT RESOLVING PENDING ADVERSARY PROCEEDINGS AGAINST ACAS, LLC AND RELATED ENTITIES AND AUTHORIZING TRUSTEE TO ENTER INTO RELATED AGREEMENTS**

Upon consideration of the motion (the "**Motion**") of Harold B. Murphy, the Chapter 7 trustee (the "**Trustee**" or "**Chapter 7 Trustee**") of New England Confectionery Company, Inc. ("**NECCO Candy**" or the "**Debtor**"), for the entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving he Settlement Agreement dated as of December __, 2020 (the "**Settlement Agreement**") [1] between and among the Trustee and ACAS, LLC ("**ACAS**"), Ares Capital Corporation ("**ARCC**"), Ares Capital Management LLC, Michael McGee, Myung Yi, Anuj Khanna, Stephen Chehi, Daniel Katz, and nominal defendants NECCO Realty Investments, LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO Realty MA III LLC (collectively, the "**Defendants**") and authorizing the Trustee to enter into certain related agreements which are in furtherance of the terms of the Settlement Agreement (the "**Related Agreements**"); the Court having reviewed the Motion and considered argument in support of such Motion; and it further appearing that the relief sought in the Motion is appropriate based on the record of the hearing held before this Court; and after due deliberation

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

and sufficient cause appearing therefor; the Court hereby makes the following findings of fact and conclusions of law. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

## FINDINGS OF FACT:

A.       On April 3, 2018 (the "**Petition Date**"), three (3) of NECCO Candy's trade creditors filed an involuntary petition against NECCO Candy in the United States Bankruptcy Court for the District of Massachusetts (the "**Court**"). On April 19, 2018, the Court held a hearing, entered an order for relief, and granted a motion to convert the case to Chapter 11 (the "**Bankruptcy Case**"). On April 20, 2018, the Court authorized the appointment of the Trustee as Chapter 11 Trustee for NECCO Candy. On January 15, 2019, upon motion by the Chapter 11 Trustee, the case was converted to a case under Chapter 7 and the Trustee was appointed Chapter 7 Trustee of NECCO Candy.

B.       The Defendants have filed multiple claims against the Debtor and the Debtor's estate including without limitation, Claim Nos. 138-1, 139-1, 151-1 through 155-1, 157-1 through 159-1, and 160-1 on account of among other things, amounts purported to be loaned to the Debtor by ACAS, asserted indemnification rights, and rent and related charges asserted to be due under a certain lease of the Debtor's premises.

C.       Following investigation, the Trustee commenced two actions against the Defendants, respectively captioned as *Murphy v. ACAS, LLC, et al.*, Adv. Proc. No. 18-01140 and *Murphy v. ACAS, LLC, et al.*, Adv. Proc. No. 19-01011 in which the Trustee seeks to disallow the

Defendants' claims against estate, certain affirmative recoveries against the Defendants, and related relief (collectively, the "**Adversary Proceedings**").

D. In Adversary Proceeding 18-01140, against ACAS, NECCO Realty Investments LLC, and NECCO Realty (the "**Debt Action**"), the Trustee alleges, among other things, that ACAS, which was an indirect shareholder of and a lender to NECCO Candy, caused NECCO Candy to take certain actions and to enter into certain transactions that, the Trustee claims, were intended to benefit ACAS rather than NECCO Candy. As a result of its alleged conduct the Trustee asserts twenty-eight (28) counts against the Defendants in the Debt Action including, among others, that ACAS should be held liable for breach of fiduciary duty; that ACAS's claims against NECCO Candy should be disallowed, equitably subordinated or recharacterized; that payments allegedly made to or for the benefit of ACAS should be avoided under fraudulent transfer and preference theories; that various entities should be consolidated with one another; that the Trustee should obtain the benefit of certain value that was received by NECCO Realty; and that NECCO Realty's rent claim against NECCO Candy should also be disallowed.

E. In Adversary Proceeding 19-01011, against ACAS, ARCC, Ares Capital Management LLC, and certain Defendants who served as directors and officers of the Debtor (the "**D&O Action**"), the Trustee asserts that those officers and directors of NECCO Candy breached their fiduciary duty by permitting certain transactions to take place, and preventing others from taking place. As a result of the alleged conduct, the Trustee asserts four (4) counts for breach of fiduciary duties against various Director Defendants in the D&O Action relating to and in connection with (a) the Cannon Deal, (b) the termination of the Revere Lease and the imposition of the Atlantic Lease, and (c) the liquidation of NECCO Candy's assets. The Trustee asserts six

3

(6) corresponding aiding and abetting actions against ACAS, ARCC, and Ares Capital Management, LLC.

F.      The Defendants dispute that they engaged in any wrongdoing, breached any fiduciary duties, violated any laws, statutes or regulations, or that the Trustee is entitled to relief on any claims brought or that could have been brought in the Adversary Proceedings.

G.      On November 5, 2018, the Defendants filed motions to dismiss the Adversary Proceedings.  The Trustee filed oppositions to those motions.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the Debt Action. DI 44, No. 18-01140.  On August 16, 2019, the Trustee filed an amended complaint in that proceeding.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the D&O Action.  DI 63, No. 19-01011.  On February 14, 2020, the Trustee filed an amended complaint in that matter.  The Defendants in the Debt Action subsequently filed a separate motion to dismiss Counts VI-XVI, XIII, and XXV of the Trustee's amended complaint.  The Defendants in the D&O Action have answered the Trustee's complaint.

H.      The Trustee and the Defendants have engaged in good faith negotiations with respect to resolution of the Defendant's claims against the estate and the claims asserted in the Adversary Proceedings, with the aim of resolving all outstanding disputes between the Trustee, the Debtor, the Debtor's bankruptcy estate, and the Defendants.

I.      Following their negotiations and an all-day mediation session on September 9, 2020, the Trustee and the Defendants have reached a comprehensive settlement of all of their outstanding disputes, as memorialized in the Settlement Agreement. The Related Agreements effectuate certain material provisions of the Settlement Agreement relating to the assumption of a certain pension plan.

4

**CONCLUSIONS OF LAW:**

1.      This Court has subject matter jurisdiction to consider the Motion and the relief requested therein, in accordance with 28 U.S.C. §§157 and 1334.

2.      Venue for the consideration of the Motion is properly laid in this judicial district pursuant to 28 U.S.C. §1409.

3.      Proper, timely, adequate and sufficient notice of the Motion, the hearing thereon and the related objection deadline has been given in accordance with Bankruptcy Rules 2002 and 9019.  The foregoing notice constitutes good, appropriate and sufficient notice, and no other or further notice need be given.

4.      The Court has considered the probability of success with respect to the claims of the Defendants against the Debtor's estate and the claims asserted in the Adversary Proceedings, the complexity of the related litigation, and the attendant expense, inconvenience and delay, as well as the paramount interests of creditors in this proceeding.  The Court has also considered and credited the opinion of the Trustee and his counsel in determining whether the proposed Settlement Agreement is fair and equitable.

5.      The Settlement Agreement falls well above the lowest point in the range of reasonableness with respect to potential litigation outcomes.  The Settlement Agreement is fair, reasonable, equitable and in the best interests of the Debtor and its bankruptcy estate.  The Trustee exercised reasonable and appropriate business and legal judgment in determining to enter the Settlement Agreement.

6.      The Related Agreements are necessary to effectuate the terms of the Settlement Agreement and the Trustee's request for authority to enter into the Related Agreements is warranted and should be granted.

7.     The Settlement Agreement will confer a significant benefit on the Debtor and its bankruptcy estate.

For all of the foregoing reasons, it is hereby

**ORDERED** that all objections to the Motion are overruled; and it is further

**ORDERED** that the Motion is granted in its entirety; and it is further

**ORDERED** that the Settlement Agreement is approved, and the parties to the Settlement Agreement are authorized to take such action as is necessary to effectuate the terms of the Settlement Agreement; and it is further

**ORDERED** that the Trustee is authorized to execute and enter into the Related Agreements and to take such further actions as are reasonably necessary to effectuate the terms of the Settlement Agreement; and it is further

**ORDERED** that this Court shall retain jurisdiction over any and all disputes arising under or otherwise relating to this Order.

Dated:        Boston, Massachusetts
                        _____, 2021


_____
Honorable Melvin S. Hoffman,
United States Bankruptcy Judge

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), effective as of the Effective Date (defined below), is entered into by ACAS, LLC ("ACAS"); Necco Holdings, Inc. ("NHI"), ███████

████████████████████████████████████████████████████

Harold B. Murphy acting in his capacity as chapter 7 trustee of the estate of the New England Confectionary Company, Inc. (the "Trustee"); and the Pension Benefit Guaranty Corporation, a wholly owned United States government corporation and agency of the United States ("PBGC", and collectively with ACAS, NHI and the Trustee, the "Parties").

## RECITALS

New England Confectionary Company, Inc. ("NECCO") sponsors and maintains the Sixth Amended And Restated NECCO Pension Plan (the "Plan").

On April 17, 2018, NECCO filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

The Trustee is performing the obligations of the Plan's administrator pursuant to 11 U.S.C. § 704(a)(11).



The Parties are in a dispute ████████████████████████████████████

███████████████████████████

The Parties have previously exchanged a draft Non-Binding Term Sheet (the "Term Sheet") in an effort to move toward resolution of such dispute.

As contemplated in the Term Sheet superseded hereby, the Parties have agreed to settle such dispute on the terms and subject to the conditions set forth hereinbelow.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the Parties agree as follows:

1.       **COMMITMENTS BY ACAS AND NHI**

**A. Assumption of Plan Sponsorship by NHI**

As soon as practicable but in no event later than five Business Days after the Effective Date (as defined below), ACAS shall cause NHI to and NHI shall, pursuant to the terms of an assumption agreement which ACAS, NHI and the Trustee shall execute (the "Assumption Agreement"), assume for purposes of all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Internal Revenue Code of 1986, as amended (the "Code") including without limitation Sections 412 and 430 thereof, sponsorship of the Plan from NECCO, including the power to amend and terminate the Plan by action of NHI subject to the requirements of ERISA (such assumption, the "Plan Assumption" and the date thereof, the "Assumption Date"). ACAS or NHI shall provide to PBGC evidence of the Plan Assumption ████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

**B. Make Up Contribution**

Within ten Business Days after the Assumption Date, NHI shall make a contribution to

the Plan equal to ████████████████████████████████████████████

████████████████████████████████████████████

████████ (the "<u>Make Up Contribution</u>"; the date of such contribution, the

"<u>Contribution Date</u>").



███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

**2.    COMMITMENTS BY PBGC**

**A. Release**

Upon the later of the Plan Assumption Date and the Contribution Date, PBGC, on behalf of itself, its successors, and their officers, directors, employees, agents, representatives, and attorneys, shall be deemed to withdraw, release, remise, forgive, acquit, settle, compromise and forever discharge the Trustee, NECCO, NECCO's bankruptcy estate, and related parties ████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████ from and against any and all claims of every kind or nature whatsoever, relating in any way to the Plan, including, without limitation, filed Claim Nos. 100-1, 101-1, and 102-1 (PBGC shall withdraw such filed Claims as soon as practicable following the effectiveness of this release). ████████████████████████████████

████████████████████████████████████████

██████████████████████.

**B. Acknowledgement**

Other than payment of the Make Up Contribution, PBGC represents that it is not aware of any action that is required for the Plan or the sponsor thereof to presently come into

compliance with Title IV of ERISA and the minimum funding standards set forth in Title I of ERISA and the Code.

### C.  No Further Claims

PBGC agrees that, upon payment of the Make Up Contribution to the Plan after the Assumption Date, PBGC will have no claims relating to the Plan against ACAS or NHI ███████████████████████████████████ or any officers or employees thereof or any other ACAS affiliates that arose prior to the Assumption Date. ███████



### 3.    **COMMITMENTS BY THE TRUSTEE**

### A.  All Necessary Actions

The Trustee agrees to take all actions reasonably necessary to expeditiously cause the transfer of sponsorship from NECCO to NHI, including, but not limited to, entering into the Assumption Agreement with ACAS and NHI as contemplated by Section 1.A. hereof and making any required governmental filings.

## B. Court Approval

The Trustee shall seek Bankruptcy Court authority to enter into this Agreement at the same time the Trustee seeks Bankruptcy Court approval of that certain settlement agreement between the Trustee and ACAS, Ares Capital Corporation, Ares Capital Management LLC, et al ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ .

## 4.      MISCELLANEOUS PROVISIONS

### A. Specific Performance

The Parties agree that irreparable damage for which monetary relief, even if available, would not be an adequate remedy, would occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or is otherwise breached, including if a Party fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement.  To the fullest extent permitted by law, the Parties acknowledge and agree that (i) the Parties shall be entitled to seek an injunction or injunctions, specific performance or other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, without proof of damages or otherwise, this being in addition to any other remedy to which they are entitled under this Agreement, █████, or at law or in equity, and (ii) the right of specific enforcement is an integral part of the transactions contemplated by this Agreement and without that right, the Parties would not have entered into this Agreement.  The Parties

agree not to assert that a remedy of specific enforcement is unenforceable, invalid, contrary to law or inequitable for any reason, and not to assert that a remedy of monetary damages would provide an adequate remedy or that the Parties otherwise have an adequate remedy at law.   The Parties acknowledge and agree that any party seeking an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement shall not be required to provide any bond or other security in connection with any such order or injunction.

### B.  Successors and Assigns

This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of each Party.  No assignment or delegation of the obligations hereunder shall be made by any Party without the prior written consent of the other Parties, except by operation of law; provided, however, that ACAS or NHI may, without consent, assign or delegate any obligations hereunder, except those under Section 1 hereof, to an affiliate.

### C.  No Third Party Beneficiaries Except the Plan

Nothing in this Agreement is intended or may be construed to give any person or entity, other than ACAS, NHI, PBGC, the Plan, and the Trustee and their respective successors, any legal or equitable right, remedy, or claim under or in respect to this Agreement or any conditions and provisions contained herein.   This Agreement and any conditions and provisions hereof are intended to be for the sole and exclusive benefit of ACAS, NHI, PBGC, the Plan, and the Trustee and their respective successors, and for the benefit of no other person or entity.   Nothing expressed or mentioned in or to be implied from this

Agreement gives any other person or entity any legal or equitable right, remedy, or claim against the Parties under or in respect of this Agreement.

### D.  No Admissions

This Agreement shall not operate as an admission of liability, or of any fact, by any Party.  Neither this Agreement nor any action taken pursuant to this Agreement may be offered or received in evidence in any action or proceeding as an admission of liability or wrongdoing by any Party except in connection with any Party's obligations hereunder ▮ ▮.  No Party may seek to offer this Agreement, or any communications related to it, as evidence in any adversary proceeding or other litigation (other than proceedings to enforce this Agreement ▮).

### E.  Amendments

This Agreement may not be changed, modified or altered except in writing signed by all Parties.

### F.  Entire and Integrated Agreement

▮, the Parties agree that this Agreement represents the sole and exclusive agreement between the Parties with respect to all matters set forth herein and that all prior communications, representations, undertakings and understandings with respect hereto including, without limitation, the Term Sheet, are merged into and superseded by this Agreement.

### G.  Severability

If any provision of this Agreement, or the application thereof, shall for any reason or

to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, then the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect if both the economic and legal substance of the transactions contemplated thereby are not materially affected in any manner adverse to the Parties.  Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

### H.  Waiver of Breach

Any waiver by a Party of a breach shall be effective only if made in writing and duly executed by the Party alleged to have waived the breach.  The waiver by any Party of a breach by another Party of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

### I.  Consideration

The Parties agree that sufficient consideration has passed among them by virtue of this Agreement, including the releases, promises, payments and other provisions herein, all of which the Parties deem valid, valuable and enforceable.

### J.  Notices

All notices, demands or other communications which may be or are required to be given under this Agreement shall be in writing and shall be given electronically and by a nationally recognized overnight delivery service, addressed to the Party who is to receive same (or to such other address as any Party shall notify the other Party by notice given in accordance with this Section 4.I.) as follows:

As to ACAS:



As to NHI:



As to the PBGC:



As to the Trustee:



## K.  Joint Drafting

Each of the Parties participated in drafting this Agreement, and each has read, fully

reviewed, and understands each of the provisions of this Agreement.  Each Party has relied

on the advice and representation of competent legal counsel of its own choosing in

connection with the drafting and execution of this Agreement.  Therefore, the language of

this Agreement shall not be presumptively construed in favor of or against any Party in

accordance with any rule of law, legal decision or doctrine.

### L.  Governing Law; Jurisdiction and Venue; No Jury

This Agreement shall be governed by and construed and enforced in accordance with ERISA, the Code and any other applicable federal law and to the extent not preempted by federal law, the laws of the Commonwealth of Massachusetts, without regard to Massachusetts's choice of law provisions.  To the fullest extent permitted by law, the Parties irrevocably agree to submit to the jurisdiction of the Bankruptcy Court in the event that any action or proceeding is brought with respect to or in connection with this Agreement and agree that the Bankruptcy Court shall be the exclusive venue for any such action or proceeding.  In the event that the Bankruptcy Court determines that either jurisdiction or venue is inappropriate, the Parties agree that to the fullest extent permitted by law, jurisdiction and venue under this paragraph shall instead be in the United States District Court, District of Massachusetts.  To the fullest extent permitted by law, each of the Parties waives any objection that they may now or hereafter have to the venue of such action or proceeding in such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same.

**TO THE FULLEST EXTENT PERMITTED BY LAW, THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF SUCH ACTION OR PROCEEDING.**

### M. Section Headings

The section headings contained in this Agreement are for reference purposes only and

shall not affect in any way the meaning or interpretation of this Agreement.

### N. Pronouns

All references made and all pronouns used herein shall be construed in the singular or plural and in such gender as the context or circumstances require.

### O. Voluntary Execution

This Agreement is executed voluntarily by each of the Parties. At the time of the execution of this Agreement, each of the Parties acknowledges that it was not under duress or undue influence and that he or it has relied upon the advice of competent legal counsel of he or its own choosing in connection with the execution of this Agreement.

### P. Authority of Signatories

The individuals signing this Agreement and the Party on whose behalf such individuals are signing, hereby represent and warrant that they are empowered and authorized to sign on behalf of and bind the Party for whom they have signed.

### Q. Execution in Counterparts

This Agreement may be executed in one or more counterparts, each of which shall, for all purposes, be deemed to be an original and all of which, when taken together, shall constitute the same instrument notwithstanding that the Parties may not have signed the same counterpart.

### R. Electronic Signatures

This Agreement may be executed in one or more counterparts and by different Parties on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Delivery of an executed counterpart

by emailed PDF file ████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████ will be equally as effective as delivery of an

original executed counterpart.

**S.  Cooperation; Further Assurances;** ██████████

The Parties agree to reasonably cooperate in the implementation of this Agreement.

From time to time, as and when reasonably requested by any Party hereto, any other Party

hereto shall execute and deliver, or cause to be executed and delivered, all such documents

and instruments and shall take, or cause to be taken, all such further or other actions as

such other Party may reasonably deem necessary or desirable to consummate the

transactions contemplated by this Agreement. ██████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████.

**T.  Certain Definitions**

"Effective Date" shall mean the date upon which all of the Parties have exchanged

executed signature pages or, if later, the date that the Bankruptcy Court enters an order

approving this Agreement.

"Business Day" means any day other than Saturday, Sunday, federal holiday or other

day on which PBGC is authorized or required by law, executive order or government

decree to be closed.

[Remainder of Page Left Intentionally Blank]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

ACAS, LLC:

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on

the date(s) indicated below their respective signatures.

NECCO Holdings, Inc.:

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on

the date(s) indicated below their respective signatures.


PBGC:


By:_____


Name:_____


Title:_____


Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

Chapter 7 Trustee for the estate of NECCO:

By:_____

Name:_Harold B. Murphy_____

Title:__Bankruptcy Trustee_____

Date:_____

EXHIBIT B

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), effective as of the Effective Date (defined below), is entered into by ACAS, LLC ("ACAS"); Necco Holdings, Inc. ("NHI"), ███████

████████████████████████████████████████

Harold B. Murphy acting in his capacity as chapter 7 trustee of the estate of the New England Confectionary Company, Inc. (the "Trustee"); and the Pension Benefit Guaranty Corporation, a wholly owned United States government corporation and agency of the United States ("PBGC", and collectively with ACAS, NHI and the Trustee, the "Parties").

## RECITALS

New England Confectionary Company, Inc. ("NECCO") sponsors and maintains the Sixth Amended And Restated NECCO Pension Plan (the "Plan").

On April 17, 2018, NECCO filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

The Trustee is performing the obligations of the Plan's administrator pursuant to 11 U.S.C. § 704(a)(11).



The Parties are in a dispute ███████████████████████████████

███████████████████████

The Parties have previously exchanged a draft Non-Binding Term Sheet (the "Term Sheet") in an effort to move toward resolution of such dispute.

As contemplated in the Term Sheet superseded hereby, the Parties have agreed to settle such dispute on the terms and subject to the conditions set forth hereinbelow.

**NOW, THEREFORE**, in consideration of the foregoing, and other good and valuable consideration, the Parties agree as follows:

1.      **COMMITMENTS BY ACAS AND NHI**

**A. Assumption of Plan Sponsorship by NHI**

As soon as practicable but in no event later than five Business Days after the Effective Date (as defined below), ACAS shall cause NHI to and NHI shall, pursuant to the terms of an assumption agreement which ACAS, NHI and the Trustee shall execute (the "Assumption Agreement"), assume for purposes of all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Internal Revenue Code of 1986, as amended (the "Code") including without limitation Sections 412 and 430 thereof, sponsorship of the Plan from NECCO, including the power to amend and terminate the Plan by action of NHI subject to the requirements of ERISA (such assumption, the "Plan Assumption" and the date thereof, the "Assumption Date"). ACAS or NHI shall provide to PBGC evidence of the Plan Assumption ███████████

██████████████████████████████████████████████████

████████████████████████████████████

### B. Make Up Contribution

Within ten Business Days after the Assumption Date, NHI shall make a contribution to the Plan equal to █████████████████████████████████

███████████████████████████████████████████

██████████ (the "Make Up Contribution"; the date of such contribution, the "Contribution Date").



██████████████████████████████████████████████████

## 2.   COMMITMENTS BY PBGC

### A. Release

Upon the later of the Plan Assumption Date and the Contribution Date, PBGC, on behalf of itself, its successors, and their officers, directors, employees, agents, representatives, and attorneys, shall be deemed to withdraw, release, remise, forgive, acquit, settle, compromise and forever discharge the Trustee, NECCO, NECCO's bankruptcy estate, and related parties ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████   from and against any and all claims of every kind or nature whatsoever, relating in any way to the Plan, including, without limitation, filed Claim Nos. 100-1, 101-1, and 102-1 (PBGC shall withdraw such filed Claims as soon as practicable following the effectiveness of this release).   ███████████████████████████████

████████████████████████████████████████

███████████████████.

### B. Acknowledgement

Other than payment of the Make Up Contribution, PBGC represents that it is not aware of any action that is required for the Plan or the sponsor thereof to presently come into

compliance with Title IV of ERISA and the minimum funding standards set forth in Title

I of ERISA and the Code.

### C. No Further Claims

PBGC agrees that, upon payment of the Make Up Contribution to the Plan after the

Assumption Date, PBGC will have no claims relating to the Plan against ACAS or NHI

████████████████████████████████████████ or any officers or employees thereof

or any other ACAS affiliates that arose prior to the Assumption Date. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ .

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ .

### 3. COMMITMENTS BY THE TRUSTEE

### A. All Necessary Actions

The Trustee agrees to take all actions reasonably necessary to expeditiously cause the

transfer of sponsorship from NECCO to NHI, including, but not limited to, entering into

the Assumption Agreement with ACAS and NHI as contemplated by Section 1.A. hereof

and making any required governmental filings.

**B. Court Approval**

The Trustee shall seek Bankruptcy Court authority to enter into this Agreement at the same time the Trustee seeks Bankruptcy Court approval of that certain settlement agreement between the Trustee and ACAS, Ares Capital Corporation, Ares Capital Management LLC, et al ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ .

### 4.    **MISCELLANEOUS PROVISIONS**

#### A. Specific Performance

The Parties agree that irreparable damage for which monetary relief, even if available, would not be an adequate remedy, would occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or is otherwise breached, including if a Party fails to take any action required of it hereunder to consummate the transactions contemplated by this Agreement.  To the fullest extent permitted by law, the Parties acknowledge and agree that (i) the Parties shall be entitled to seek an injunction or injunctions, specific performance or other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, without proof of damages or otherwise, this being in addition to any other remedy to which they are entitled under this Agreement, ████ , or at law or in equity, and (ii) the right of specific enforcement is an integral part of the transactions contemplated by this Agreement and without that right, the Parties would not have entered into this Agreement.  The Parties

agree not to assert that a remedy of specific enforcement is unenforceable, invalid, contrary to law or inequitable for any reason, and not to assert that a remedy of monetary damages would provide an adequate remedy or that the Parties otherwise have an adequate remedy at law. The Parties acknowledge and agree that any party seeking an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement shall not be required to provide any bond or other security in connection with any such order or injunction.

### B.  Successors and Assigns

This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of each Party. No assignment or delegation of the obligations hereunder shall be made by any Party without the prior written consent of the other Parties, except by operation of law; provided, however, that ACAS or NHI may, without consent, assign or delegate any obligations hereunder, except those under Section 1 hereof, to an affiliate.

### C.  No Third Party Beneficiaries Except the Plan

Nothing in this Agreement is intended or may be construed to give any person or entity, other than ACAS, NHI, PBGC, the Plan, and the Trustee and their respective successors, any legal or equitable right, remedy, or claim under or in respect to this Agreement or any conditions and provisions contained herein. This Agreement and any conditions and provisions hereof are intended to be for the sole and exclusive benefit of ACAS, NHI, PBGC, the Plan, and the Trustee and their respective successors, and for the benefit of no other person or entity. Nothing expressed or mentioned in or to be implied from this

Agreement gives any other person or entity any legal or equitable right, remedy, or claim against the Parties under or in respect of this Agreement.

### D.  No Admissions

This Agreement shall not operate as an admission of liability, or of any fact, by any Party.  Neither this Agreement nor any action taken pursuant to this Agreement may be offered or received in evidence in any action or proceeding as an admission of liability or wrongdoing by any Party except in connection with any Party's obligations hereunder ██ ███████.  No Party may seek to offer this Agreement, or any communications related to it, as evidence in any adversary proceeding or other litigation (other than proceedings to enforce this Agreement ██████).

### E.  Amendments

This Agreement may not be changed, modified or altered except in writing signed by all Parties.

### F.  Entire and Integrated Agreement

████████████████████████████, the Parties agree that this Agreement represents the sole and exclusive agreement between the Parties with respect to all matters set forth herein and that all prior communications, representations, undertakings and understandings with respect hereto including, without limitation, the Term Sheet, are merged into and superseded by this Agreement.

### G.  Severability

If any provision of this Agreement, or the application thereof, shall for any reason or

to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, then the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect if both the economic and legal substance of the transactions contemplated thereby are not materially affected in any manner adverse to the Parties.  Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

### H.  Waiver of Breach

Any waiver by a Party of a breach shall be effective only if made in writing and duly executed by the Party alleged to have waived the breach.  The waiver by any Party of a breach by another Party of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

### I.  Consideration

The Parties agree that sufficient consideration has passed among them by virtue of this Agreement, including the releases, promises, payments and other provisions herein, all of which the Parties deem valid, valuable and enforceable.

### J.  Notices

All notices, demands or other communications which may be or are required to be given under this Agreement shall be in writing and shall be given electronically and by a nationally recognized overnight delivery service, addressed to the Party who is to receive same (or to such other address as any Party shall notify the other Party by notice given in accordance with this Section 4.I.) as follows:

As to ACAS:



As to NHI:



As to the PBGC:



As to the Trustee:



**K.  Joint Drafting**

Each of the Parties participated in drafting this Agreement, and each has read, fully

reviewed, and understands each of the provisions of this Agreement.  Each Party has relied

on the advice and representation of competent legal counsel of its own choosing in

connection with the drafting and execution of this Agreement.  Therefore, the language of

this Agreement shall not be presumptively construed in favor of or against any Party in

accordance with any rule of law, legal decision or doctrine.

**L.  Governing Law; Jurisdiction and Venue; No Jury**

This Agreement shall be governed by and construed and enforced in accordance with ERISA, the Code and any other applicable federal law and to the extent not preempted by federal law, the laws of the Commonwealth of Massachusetts, without regard to Massachusetts's choice of law provisions.  To the fullest extent permitted by law, the Parties irrevocably agree to submit to the jurisdiction of the Bankruptcy Court in the event that any action or proceeding is brought with respect to or in connection with this Agreement and agree that the Bankruptcy Court shall be the exclusive venue for any such action or proceeding.  In the event that the Bankruptcy Court determines that either jurisdiction or venue is inappropriate, the Parties agree that to the fullest extent permitted by law, jurisdiction and venue under this paragraph shall instead be in the United States District Court, District of Massachusetts.  To the fullest extent permitted by law, each of the Parties waives any objection that they may now or hereafter have to the venue of such action or proceeding in such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same.

**TO THE FULLEST EXTENT PERMITTED BY LAW, THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF SUCH ACTION OR PROCEEDING.**

**M. Section Headings**

The section headings contained in this Agreement are for reference purposes only and

shall not affect in any way the meaning or interpretation of this Agreement.

### N.  Pronouns

All references made and all pronouns used herein shall be construed in the singular or plural and in such gender as the context or circumstances require.

### O.  Voluntary Execution

This Agreement is executed voluntarily by each of the Parties. At the time of the execution of this Agreement, each of the Parties acknowledges that it was not under duress or undue influence and that he or it has relied upon the advice of competent legal counsel of he or its own choosing in connection with the execution of this Agreement.

### P.  Authority of Signatories

The individuals signing this Agreement and the Party on whose behalf such individuals are signing, hereby represent and warrant that they are empowered and authorized to sign on behalf of and bind the Party for whom they have signed.

### Q.  Execution in Counterparts

This Agreement may be executed in one or more counterparts, each of which shall, for all purposes, be deemed to be an original and all of which, when taken together, shall constitute the same instrument notwithstanding that the Parties may not have signed the same counterpart.

### R.  Electronic Signatures

This Agreement may be executed in one or more counterparts and by different Parties on separate counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Delivery of an executed counterpart

by emailed PDF file ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ will be equally as effective as delivery of an

original executed counterpart.

### S.  Cooperation; Further Assurances; ██████████

The Parties agree to reasonably cooperate in the implementation of this Agreement.

From time to time, as and when reasonably requested by any Party hereto, any other Party

hereto shall execute and deliver, or cause to be executed and delivered, all such documents

and instruments and shall take, or cause to be taken, all such further or other actions as

such other Party may reasonably deem necessary or desirable to consummate the

transactions contemplated by this Agreement. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████.

### T.  Certain Definitions

"Effective Date" shall mean the date upon which all of the Parties have exchanged

executed signature pages or, if later, the date that the Bankruptcy Court enters an order

approving this Agreement.

"Business Day" means any day other than Saturday, Sunday, federal holiday or other

day on which PBGC is authorized or required by law, executive order or government

decree to be closed.

[Remainder of Page Left Intentionally Blank]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

ACAS, LLC:

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

NECCO Holdings, Inc.:

By:_____

Name:_____

Title:_____

Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on

the date(s) indicated below their respective signatures.


PBGC:


By:_____


Name:_____


Title:_____


Date:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

Chapter 7 Trustee for the estate of NECCO:

By:_____

Name:__Harold B. Murphy_____

Title:___Bankruptcy Trustee_____

Date:_____

## PLAN ASSUMPTION AGREEMENT

This Plan Assumption Agreement ("Agreement"), effective as of the Effective Date (defined below), is entered into by and between ACAS, LLC ("ACAS"); NECCO Holdings, Inc. ("NHI"), and  Harold B. Murphy acting in his capacity as chapter 7 trustee of the estate of the New England Confectionary Company, Inc. (the "Trustee"); relating to the transfer of sponsorship of the frozen NECCO Pension Plan (the "Plan"), from the New England Confectionary Company, Inc. ("NECCO") to NHI.

## RECITALS

WHEREAS, NECCO sponsors and maintains the Plan; and

████████████████████████████████████████████████████

████

**NOW, THEREFORE**, in consideration of the foregoing, in furtherance of the Settlement Agreement by and between ACAS, NHI, the Trustee and the Pension Benefit Guaranty Corporation ("PBGC") executed contemporaneously herewith, and other good and valuable consideration, ACAS, NHI and the Trustee agree as follows:

1.      **ASSUMPTION OF PLAN AND TRUST AND RELATED ACTIONS**

**A.  Assumption of Plan Sponsorship by NHI**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

1

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

**B. Acceptance of Trust Agreement**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████

**C. Continuance of Plan; Right to Amend or Terminate**

Following NHI's assumption of the Plan, the Plan will continue in accordance with its terms, subject to NHI's right to amend or terminate the Plan at any time in accordance with ERISA.

**D.** ████████████████████ **Contract**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

2

████████████████████████████████████████████████████████

████████████████████████████████.

### E. All Necessary Actions

The Trustee agrees to take all actions reasonably necessary to cause the transfer of sponsorship

from NECCO to NHI. ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

3

4

### 3.   <u>MISCELLANEOUS PROVISIONS</u>

#### A.  Successors and Assigns

This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of each Party.  No assignment or delegation of the obligations hereunder shall be made by any Party without the prior written consent of the other Parties, except by operation of law; provided, however, that ACAS or NHI may, without consent, assign or delegate its obligations hereunder to an affiliate.

#### B.  No Third Party Beneficiaries

Nothing in this Agreement is intended or shall be construed to give any person, other than ACAS, NHI and the Trustee and their respective successors, any legal or equitable right, remedy, or claim under or in respect to this Agreement or any conditions and provisions contained herein. This Agreement and any conditions and provisions hereof are intended to be for the sole and exclusive benefit of ACAS, NHI and the Trustee and their respective successors, and for the benefit of no other person.

#### C.  No Admissions

This Agreement shall not operate as an admission of liability, or of any fact, by any Party. Neither this Agreement nor any action taken pursuant to this Agreement shall be offered or received in evidence in any action or proceeding as an admission of liability or wrongdoing by any Party.  No Party shall seek to offer this Agreement, or any communications related to it, as evidence in any adversary proceedings or other litigation (other than proceedings to enforce this Agreement).  █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

### D. Amendments

This Agreement may not be changed, modified or altered except in writing signed by the Party against whom the amendment is sought to be enforced.

### E. Entire and Integrated Agreement

The Parties agree that this Agreement represents the sole and exclusive agreement between the Parties with respect to all matters set forth herein and that all prior communications, representations, undertakings and understandings with respect thereto are merged into and superseded by this Agreement.

### F. Severability

If any provision of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, then the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to reasonably accomplish the intent of the Parties.

### G. Waiver of Breach

Any waiver by a Party of a breach shall be effective only if made in writing and duly executed by the Party alleged to have waived the breach. The waiver by any Party of a breach by another Party of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

### H. Consideration

The Parties agree that sufficient consideration has passed among them by virtue of this

6

Agreement, including the releases, promises, payments and other provisions herein, all of which the Parties deem valid, valuable and enforceable.

## I.  Notices

All notices, demands or other communications which may be or are required to be given under this Agreement or with respect to this Agreement shall be in writing and shall be given electronically and by a nationally recognized overnight delivery service, addressed to the Party who is to receive same (or to such other address as any Party shall notify the other Party by notice given in accordance with this Section) as follows:

As to ACAS:

As to NHI:

As to the Trustee:

7

### J. Joint Drafting

Each of the Parties participated in drafting this Agreement, and each has read, fully reviewed and understands each of the provisions of this Agreement. Each Party has relied on the advice and representation of competent legal counsel of its own choosing in connection with the drafting and execution of this Agreement. Therefore, the language of this Agreement shall not be presumptively construed in favor of or against any Party in accordance with any rule of law, legal decision or doctrine.

### K. Governing Law; Jurisdiction and Venue

This Agreement shall be governed by and construed and enforced in accordance with ERISA, and to the extent not preempted by federal law, the laws of the Commonwealth of Massachusetts, without regard to Massachusetts' choice of law provisions. The Parties hereto irrevocably agree to submit to the jurisdiction of the Bankruptcy Court, in the event that any action or proceeding is brought with respect to or in connection with this Agreement. Unless the Parties otherwise agree in writing, the Bankruptcy Court shall be the exclusive venue for any action or proceeding is brought with respect to or in connection with this Agreement. In the event that the Bankruptcy Court determines that either jurisdiction or venue is inappropriate, jurisdiction and venue under this paragraph shall instead be in the United States District Court, District of Massachusetts.

### L. Section Headings

The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

### M. Pronouns

All references made and all pronouns used herein shall be construed in the singular or plural and in such gender as the context or circumstances require.

**N.  Voluntary Execution**

This Agreement is executed voluntarily by each of the Parties. At the time of the execution of this Agreement, each of the Parties acknowledge that it was not under duress or undue influence and that each relied upon the advice of competent legal counsel of their own choosing in connection with the execution of this Agreement.

**O.  Authority of Signatories**

The individuals signing this Agreement and the Party on whose behalf such individuals are signing, hereby represent and warrant that they are empowered and authorized to sign on behalf of and bind the Party for whom they have signed.

**P.  Execution in Counterparts**

This Agreement may be executed in one or more counterparts, each of which shall, for all purposes, be deemed to be an original and all of which, when taken together, shall constitute the same instrument notwithstanding that the Parties may not have signed the same counterpart.

**Q.  Electronic Signatures**

Scanned (PDF) or facsimile signature pages of this Agreement will have the same force and effect as original "ink" signature pages.

**R.  Cooperation; Further Assurances**

The Parties agree to reasonably cooperate in the implementation of this Agreement.  From time to time, as and when reasonably requested by any Party hereto, any other Party hereto shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other Party may reasonably deem necessary or desirable to consummate the transactions contemplated by this Agreement.

## <u>CERTAIN DEFINITIONS</u>

"Effective Date" shall mean the date upon which all of the Parties (defined below) have exchanged executed signature pages.  The Parties shall cooperate and set a date for the exchange of executed signature pages.

"Parties" shall mean the ACAS, NHI, and the Trustee, collectively.

*   *   *   *   *   *   *   *

[Remainder of Page Left Intentionally Blank]

10

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

As to ACAS, LLC:

By:_____

Name:_____

Title:_____

Date:_____

11

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

As to NECCO Holdings, Inc.:

By:_____

Name:_____

Title:_____

Date:_____

12

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date(s) indicated below their respective signatures.

As to the Trustee acting on behalf of NECCO:

By:

Name:  Harold B. Murphy

Title:  Bankruptcy Trustee

Date:

13

14

15

16

EXHIBIT C

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| **CHAPTER 11 TRUSTEE OF NEW ENGLAND CONFECTIONARY COMPANY, INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**ACAS, LLC, ARES CAPITAL CORPORATION, ARES CAPITAL MANAGEMENT LLC, MICHAEL MCGEE, MYUNG YI, ANUJ KHANNA, GORDON O'BRIEN, STEPHEN CHEHI, DANIEL KATZ, DOUGLAS WEEKES, AND DAVID EATON,**<br><br>        **Defendants.** | **Adversary Proceeding No. 19-01011** |

**ORDER APPROVING SETTLEMENT AGREEMENT RESOLVING PENDING
ADVERSARY PROCEEDINGS AGAINST ACAS, LLC AND RELATED ENTITIES
AND AUTHORIZING TRUSTEE TO ENTER INTO RELATED AGREEMENTS**

Upon consideration of the motion (the "**Motion**") of Harold B. Murphy, the Chapter 7

trustee (the "**Trustee**" or "**Chapter 7 Trustee**") of New England Confectionery Company, Inc.

("**NECCO Candy**" or the "**Debtor**"), for the entry of an order pursuant to Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") approving he Settlement Agreement

dated as of December __, 2020 (the "**Settlement Agreement**") [1] between and among the Trustee

and ACAS, LLC ("**ACAS**"), Ares Capital Corporation ("**ARCC**"), Ares Capital Management

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

LLC, Michael McGee, Myung Yi, Anuj Khanna, Stephen Chehi, Daniel Katz, and nominal defendants NECCO Realty Investments, LLC, NECCO Realty MA I LLC, NECCO Realty MA II LLC, NECCO Realty MA III LLC (collectively, the "**Defendants**") and authorizing the Trustee to enter into certain related agreements which are in furtherance of the terms of the Settlement Agreement (the "**Related Agreements**"); the Court having reviewed the Motion and considered argument in support of such Motion; and it further appearing that the relief sought in the Motion is appropriate based on the record of the hearing held before this Court; and after due deliberation and sufficient cause appearing therefor; the Court hereby makes the following findings of fact and conclusions of law. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

**FINDINGS OF FACT:**

A.      On April 3, 2018 (the "**Petition Date**"), three (3) of NECCO Candy's trade creditors filed an involuntary petition against NECCO Candy in the United States Bankruptcy Court for the District of Massachusetts (the "**Court**"). On April 19, 2018, the Court held a hearing, entered an order for relief, and granted a motion to convert the case to Chapter 11 (the "**Bankruptcy Case**"). On April 20, 2018, the Court authorized the appointment of the Trustee as Chapter 11 Trustee for NECCO Candy. On January 15, 2019, upon motion by the Chapter 11 Trustee, the case was converted to a case under Chapter 7 and the Trustee was appointed Chapter 7 Trustee of NECCO Candy.

2

B.     The Defendants have filed multiple claims against the Debtor and the Debtor's estate including without limitation, Claim Nos. 138-1, 139-1, 151-1 through 155-1, 157-1 through 159-1, and 160-1 on account of among other things, amounts purported to be loaned to the Debtor by ACAS, asserted indemnification rights, and rent and related charges asserted to be due under a certain lease of the Debtor's premises.

C.     Following investigation, the Trustee commenced two actions against the Defendants, respectively captioned as *Murphy v. ACAS, LLC, et al.*, Adv. Proc. No. 18-01140 and *Murphy v. ACAS, LLC, et al.*, Adv. Proc. No. 19-01011 in which the Trustee seeks to disallow the Defendants' claims against estate, certain affirmative recoveries against the Defendants, and related relief (collectively, the "**Adversary Proceedings**").

D.     In Adversary Proceeding 18-01140, against ACAS, NECCO Realty Investments LLC, and NECCO Realty (the "**Debt Action**"), the Trustee alleges, among other things, that ACAS, which was an indirect shareholder of and a lender to NECCO Candy, caused NECCO Candy to take certain actions and to enter into certain transactions that, the Trustee claims, were intended to benefit ACAS rather than NECCO Candy.  As a result of its alleged conduct the Trustee asserts twenty-eight (28) counts against the Defendants in the Debt Action including, among others, that ACAS should be held liable for breach of fiduciary duty; that ACAS's claims against NECCO Candy should be disallowed, equitably subordinated or recharacterized; that payments allegedly made to or for the benefit of ACAS should be avoided under fraudulent transfer and preference theories; that various entities should be consolidated with one another; that the Trustee should obtain the benefit of certain value that was received by NECCO Realty; and that NECCO Realty's rent claim against NECCO Candy should also be disallowed.

3

E.     In Adversary Proceeding 19-01011, against ACAS, ARCC, Ares Capital Management LLC, and certain Defendants who served as directors and officers of the Debtor (the "**D&O Action**"), the Trustee asserts that those officers and directors of NECCO Candy breached their fiduciary duty by permitting certain transactions to take place, and preventing others from taking place.  As a result of the alleged conduct, the Trustee asserts four (4) counts for breach of fiduciary duties against various Director Defendants in the D&O Action relating to and in connection with (a) the Cannon Deal, (b) the termination of the Revere Lease and the imposition of the Atlantic Lease, and (c) the liquidation of NECCO Candy's assets.  The Trustee asserts six (6) corresponding aiding and abetting actions against ACAS, ARCC, and Ares Capital Management, LLC.

F.     The Defendants dispute that they engaged in any wrongdoing, breached any fiduciary duties, violated any laws, statutes or regulations, or that the Trustee is entitled to relief on any claims brought or that could have been brought in the Adversary Proceedings.

G.     On November 5, 2018, the Defendants filed motions to dismiss the Adversary Proceedings.  The Trustee filed oppositions to those motions.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the Debt Action. DI 44, No. 18-01140.  On August 16, 2019, the Trustee filed an amended complaint in that proceeding.  After hearing, the Bankruptcy Court entered an order granting in part and denying in part the Defendants' motion in the D&O Action.  DI 63, No. 19-01011.  On February 14, 2020, the Trustee filed an amended complaint in that matter.  The Defendants in the Debt Action subsequently filed a separate motion to dismiss Counts VI-XVI, XIII, and XXV of the Trustee's amended complaint.  The Defendants in the D&O Action have answered the Trustee's complaint.

4

H.      The Trustee and the Defendants have engaged in good faith negotiations with respect to resolution of the Defendant's claims against the estate and the claims asserted in the Adversary Proceedings, with the aim of resolving all outstanding disputes between the Trustee, the Debtor, the Debtor's bankruptcy estate, and the Defendants.

I.      Following their negotiations and an all-day mediation session on September 9, 2020, the Trustee and the Defendants have reached a comprehensive settlement of all of their outstanding disputes, as memorialized in the Settlement Agreement. The Related Agreements effectuate certain material provisions of the Settlement Agreement relating to the assumption of a certain pension plan.

### CONCLUSIONS OF LAW:

1.      This Court has subject matter jurisdiction to consider the Motion and the relief requested therein, in accordance with 28 U.S.C. §§157 and 1334.

2.      Venue for the consideration of the Motion is properly laid in this judicial district pursuant to 28 U.S.C. §1409.

3.      Proper, timely, adequate and sufficient notice of the Motion, the hearing thereon and the related objection deadline has been given in accordance with Bankruptcy Rules 2002 and 9019.  The foregoing notice constitutes good, appropriate and sufficient notice, and no other or further notice need be given.

4.      The Court has considered the probability of success with respect to the claims of the Defendants against the Debtor's estate and the claims asserted in the Adversary Proceedings, the complexity of the related litigation, and the attendant expense, inconvenience and delay, as well as the paramount interests of creditors in this proceeding.  The Court has also considered

5

and credited the opinion of the Trustee and his counsel in determining whether the proposed Settlement Agreement is fair and equitable.

5.     The Settlement Agreement falls well above the lowest point in the range of reasonableness with respect to potential litigation outcomes.  The Settlement Agreement is fair, reasonable, equitable and in the best interests of the Debtor and its bankruptcy estate.  The Trustee exercised reasonable and appropriate business and legal judgment in determining to enter the Settlement Agreement.

6.     The Related Agreements are necessary to effectuate the terms of the Settlement Agreement and the Trustee's request for authority to enter into the Related Agreements is warranted and should be granted.

7.     The Settlement Agreement will confer a significant benefit on the Debtor and its bankruptcy estate.

For all of the foregoing reasons, it is hereby

**ORDERED** that all objections to the Motion are overruled; and it is further

**ORDERED** that the Motion is granted in its entirety; and it is further

**ORDERED** that the Settlement Agreement is approved, and the parties to the Settlement Agreement are authorized to take such action as is necessary to effectuate the terms of the Settlement Agreement; and it is further

**ORDERED** that the Trustee is authorized to execute and enter into the Related Agreements and to take such further actions as are reasonably necessary to effectuate the terms of the Settlement Agreement; and it is further

6

**ORDERED** that this Court shall retain jurisdiction over any and all disputes arising

under or otherwise relating to this Order.

Dated:        Boston, Massachusetts

_____, 2021

_____

Honorable Melvin S. Hoffman,
United States Bankruptcy Judge

7